UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | EDCV 25-629-KK-DTBx | Date: | August 14, 2025 |
|---|---|---|---|
| Title: | *Vem Miller v. Chad Bianco et al.* | | |

Present: The Honorable KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Noe Ponce | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (In Chambers) Order GRANTING in PART Defendants' Motion to Dismiss and Strike Plaintiff's FAC [Dkt. 31]

## I.
## INTRODUCTION

On May 7, 2025, plaintiff Vem Miller ("Plaintiff") filed the operative First Amended Complaint ("FAC") against defendants Chad Bianco ("Bianco"), County of Riverside, Riverside Sheriff's Department ("RCSD"), David Coronado ("Coronado"), and Doe Defendants 1 through 100, alleging violations of 42 U.S.C. Section 1983 ("Section 1983") and defamation and tort claims under California law arising from the arrest of Plaintiff and defendant Bianco's public statements regarding Plaintiff's arrest. ECF Docket No. ("Dkt.") 28, FAC. On June 11, 2025, defendants Bianco and County of Riverside ("Defendants") filed a Motion to Dismiss and Strike the FAC ("Motion"). Dkt. 31, Motion ("Mot.").

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons set forth below, Defendants' Motion is **GRANTED in PART**.

## II.
## BACKGROUND

### A.  PROCEDURAL HISTORY

On March 10, 2025, Plaintiff initiated the instant action by filing a Complaint against

defendants Bianco, County of Riverside, RCSD, and Coronado, alleging violations of Section 1983 and defamation and tort claims under California law.  Dkt. 1.

On May 7, 2025, Plaintiff filed the operative FAC, removing RCSD and David Coronado as defendants and asserting the following causes of action:

1. **Cause of Action One**: Violation of the First Amendment under Section 1983 against Defendants and Doe Defendants 1 through 100;
2. **Cause of Action Two**: Municipal liability for failure to train under Section 1983 against defendant County of Riverside;
3. **Cause of Action Three**: Failure to intervene under Section 1983 against defendant County of Riverside and Doe Defendants 1 through 100;
4. **Cause of Action Four**: Slander per se against Defendants;
5. **Cause of Action Five**: Libel per se against Defendants; and
6. **Cause of Action Six**: Intentional Infliction of Emotional Distress against Defendants.

FAC at 1, 18-29.[1]

On June 11, 2025, Defendants filed the instant Motion seeking to dismiss and strike Plaintiff's claims against Defendants.  Mot.  Specifically, Defendants argue (1) Plaintiff fails to state a claim for Causes of Action One, Two, and Three; (2) Causes of Action Four and Five are subject to strike as they arise out of protected conduct under California's anti-SLAPP statute; and (3) Cause of Action Six is subject to strike as the claim is duplicative and redundant of Causes of Action Four and Five.  Id.

On July 2, 2025, Plaintiff filed an Opposition.  Dkt. 32.

On July 14, 2025, Defendants filed a Reply.  Dkt. 33.

This matter, thus, stands submitted.

**B.    RELEVANT FACTS**

As alleged in the FAC, Plaintiff is an individual residing in Nevada who is "a political supporter of the 45th and 47th President of the United States of America, Donald John Trump" and "deeply involved in political support for the President and has been since 2016[.]"  FAC ¶¶ 1-2.  Defendant Bianco is the Sheriff overseeing RCSD.  Id. ¶ 13.

On October 12, 2024, Plaintiff traveled to Coachella, California, to attend a "Trump rally".  Id. ¶ 25.  Plaintiff was in possession of "valid entry passes for the event."  Id.  Prior to entering the rally venue, "[f]ollowing standard practice from his home state of Nevada," Plaintiff "voluntarily drove up to a . . . [RCSD Deputy,] and then voluntarily disclosed to this RCSD Deputy . . . that he owned and possessed two firearms, secured in his vehicle."  Id. ¶ 26.  Specifically, Plaintiff disclosed

---

[1] The Court notes while Plaintiff asserts municipal liability for ratification in the caption of the FAC, Plaintiff fails to plead or otherwise support the claim in the body of the FAC.  FAC at 18-29.

he was in possession of a shotgun and a handgun; "[o]ffered to have law enforcement hold the firearms"; "[p]resented valid identification and entry passes"; and "[m]ade no attempt to enter the actual venue with firearms[.]" Id. ¶ 27.

After the disclosure, the deputy instructed Plaintiff to move his vehicle into a nearby alcove. Id. ¶ 28. An extensive search of Plaintiff's vehicle was subsequently conducted, lasting "approximately one hour and twenty minutes" and involving "[a]pproximately ten (10) to fifteen (15)" law enforcement personnel, including RCSD deputies, FBI agents, and Secret Service agents. Id. ¶ 32. Plaintiff alleges at no time did Defendants "[p]rovide probable cause for the extensive nature of the search; [] [d]ocument any contraband in the vehicle or on [Plaintiff's] person, or evidence of criminal activity; [] [e]xplain the necessity for the duration or scope of the search; or [] [r]eceive express consent by [Plaintiff] to do so." Id. ¶ 33.

Plaintiff was then transported to the Thermal Police Station and booked at the John Benoit Detention Center. Id. ¶ 34. The facility posted notices of inmates' legal right to a phone call. Id. ¶ 35. Plaintiff alleges he made multiple requests for phone calls but was denied. Id. Plaintiff allegedly consented to be interviewed by the FBI and Secret Service agents, however, no federal agents interviewed him. Id. Thereafter, the RCSD and its deputies "[t]ransported [Plaintiff] to jail without any form of formal questioning being conducted[.]" Id. ¶ 37. During the booking process, Defendants allegedly "[] [a]ttempted to conduct medical tests on [Plaintiff] to which he expressly denied consent; [] [s]ubjected [Plaintiff] to x-ray examination after his express refusal of medical testing; [] [f]ailed to inform [Plaintiff] of the x-ray examination prior to its administration; and [] [c]onducted the x-ray examination without obtaining required consent or providing any medical necessity." Id. ¶ 38. Plaintiff was subsequently charged with two misdemeanor violations for carrying a loaded firearm under California Penal Code Section 25850(a) and for possession of large-capacity magazines under California Penal Code Section 32310(a). Id. ¶ 39. "Both misdemeanor charges resulted in his cite and release." Id. ¶ 40.

On the morning of October 13, 2024, defendant Bianco allegedly contacted The Epoch Times by text and wrote, "We arrested a man trying to get in the perimeter with two firearms who ended up saying **he was going to kill the president**." Id. ¶ 41 (emphasis in FAC). Later that day, defendant Bianco allegedly told the Southern California News Group that RCSD had "stopped another assassination attempt," and Plaintiff had "multiple phony passports and driver's licenses." Id. ¶ 8. On the same day, defendant Bianco gave an interview to the Riverside Press-Enterprise, held a press conference, and appeared on News Nation. Id. ¶¶ 42-44. On October 14, 2024, defendant Bianco appeared on Fox News Channel. Id. ¶ 45. Plaintiff alleges during these public appearances, defendant Bianco made multiple "false statements" and "mischaracterizations", leading to "a number of incredibly damaging and facially harmful headlines on credible news outlets[.]" Id. ¶¶ 42-46. Further, Plaintiff alleges defendant Bianco continued making false statements in 2025 regarding the incident on multiple occasions, including at the [California Republican Party] convention on March 16, 2025, at a campaign event on April 12, 2025, and on the podcast, "The Britt Mayer Show" on April 11, 2025. Id. ¶¶ 49-51.

As a result of the incident and subsequent media reports, Plaintiff alleges he suffered personal and professional harm, including reputational damage, threats and ongoing harassment, loss of business opportunities and income, and severe emotional distress. Id. ¶¶ 52-53.

# III.
# LEGAL STANDARD

A complaint may be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") "only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). In considering whether a complaint states a claim, a court must "construe the pleadings in the light most favorable to the nonmoving party," Capp v. Cnty. of San Diego, 940 F.3d 1046, 1052 (9th Cir. 2019) (quoting Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005)), accepting as true all factual allegations in the complaint and drawing all reasonable inferences in the nonmoving party's favor. Moreno v. UtiliQuest, LLC, 29 F.4th 567, 573 (9th Cir. 2022). The court, however, need not accept as true "a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Iqbal, 556 U.S. at 678). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

# IV.
# DISCUSSION

**A.   PLAINTIFF'S FIRST CAUSE OF ACTION FOR FIRST AMENDMENT RETALIATION FAILS TO STATE A CLAIM**

   **1.   Applicable Law**

"A plaintiff may bring a Section 1983 claim alleging that public officials, acting in their official capacity, took action with the intent to retaliate against, obstruct, or chill the plaintiff's First Amendment rights." Boquist v. Courtney, 32 F.4th 764, 775 (9th Cir. 2022) (citation omitted). "[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." Hartman v. Moore, 547 U.S. 250, 256 (2006). "If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." Nieves v. Bartlett, 587 U.S. 391, 398 (2019) (internal quotation marks and citation omitted).

To state a claim for First Amendment retaliation, a plaintiff must allege: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. Ballentine v. Tucker, 28 F.4th 54, 61 (9th Cir. 2022) (citations omitted). With respect to the third prong, a plaintiff "must establish a 'causal connection' between the government

defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" Nieves, 587 U.S. at 398 (quoting Hartman, 547 U.S. at 259).  Specifically, the defendant's retaliatory animus "must be a but-for cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." Id. at 399 (internal quotation marks and citation omitted).  Further, because "it is particularly difficult to determine whether the adverse government action was caused by the officer's malice or the plaintiff's potentially criminal conduct[,]" to prevail on a retaliatory arrest claim under the First Amendment, the plaintiff "must plead and prove the absence of probable cause of the arrest." Id. at 402 (citation omitted).

However, even when a plaintiff is arrested with probable cause, a narrow exception exists if the plaintiff can establish retaliatory arrest under circumstances where officers have probable cause but typically would choose not to exercise their discretion to do so. Id. at 406.  Under this exception, a plaintiff must present "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." Id. at 407.  Such evidence "must be objective in order to avoid 'the significant problems that would arise from reviewing police conduct under a purely subjective standard.'" Gonzalez v. Trevino, 602 U.S. 653, 658 (2024) (citing Nieves, 587 U.S. at 407).

**2.   Analysis**

As an initial matter, Defendants appear to concede Plaintiff engaged in constitutionally protected activities and was subjected to adverse actions that would chill a person from continuing to engage in constitutionally protected conduct.[2] Mot. at 5.  Specifically, Plaintiff bases his First Amendment retaliation claim on his constitutionally protected activities of attending a political rally and assembly and making a statement regarding possession of firearms.  FAC ¶ 60.  Plaintiff further alleges Defendants took adverse actions by "preventing [Plaintiff] from attending a political rally[,]" "detaining [Plaintiff] without probable cause[,]" and "using excessive force and unlawful detention[.]"[3] Id. ¶ 58.

Defendants argue, and the Court finds, Plaintiff fails to allege there was a substantial causal relationship between the constitutionally protected activities and the adverse actions.  Specifically, Plaintiff fails to allege the absence of probable cause for Plaintiff's arrest.  To the contrary, as alleged, the facts actually demonstrate probable cause to arrest and charge Plaintiff with two misdemeanor violations for carrying a loaded firearm under Penal Code Section 25850(a) ("Section 25850(a)") and for possession of large-capacity magazines under California Penal Code Section 32310(a) ("Section 32310(a)"). Id. ¶ 39.

---

[2] Although not clearly articulated in the FAC, Plaintiff appears to assert a First Amendment retaliation claim.  See dkt. 32 at 20.

[3] To the extent Plaintiff now seeks to base his First Amendment claim on defendant Bianco's subsequent public statements concerning Plaintiff's arrest, dkt. 32 at 20-24, such arguments introduce a new legal theory not alleged in the FAC.  Accordingly, the Court cannot consider these newly asserted allegations.  See Forrett v. Gourmet Nut, Inc., 634 F. Supp. 3d 761, 765 (N.D. Cal. 2022) ("Plaintiff may not use his opposition to raise and argue new allegations or claims not in the complaint[.]") (internal quotation marks and citation omitted).

With respect to Plaintiff's alleged violation of Section 25850(a), Section 25850(a) prohibits "carrying a loaded firearm . . . in a vehicle while in any public place or on any public street in an incorporated city, city and county, or in any public place[,]" and police officers are "authorized to examine any firearm carried by anyone . . . in a vehicle while in any public place or on any public street[.]" Cal. Penal Code §§ 25850(a)-(b). Further, a police officer may "make an arrest without a warrant . . . [w]henever the officer has reasonable cause to believe that the person to be arrested has violated this section, whether or not this section has, in fact, been violated." Id. § 25850(g)(2). While Plaintiff alleges he "did not have a loaded handgun under his seat[,]" FAC ¶ 86, he concedes he was in possession of a shotgun and a handgun in his vehicle. Id. ¶¶ 26-27. Accordingly, taking all allegations as true, the presence of firearms in Plaintiff's vehicle constitutes reasonable cause that Plaintiff has violated Section 25850(a). See Padilla v. City of Los Angeles, No. 2:21 CV-03842-FWS-MRW, 2023 WL 8610526, at *8 (C.D. Cal. June 29, 2023) (finding the police officers had probable cause to arrest plaintiff for violation of Section 25850(a) once plaintiff voluntarily alerted the police officers the presence of a firearm next to his knee while seated in the driver's seat); United States v. Bontemps, No. 2:18-CR-00099-JAM, 2018 WL 5603615, at *2 (E.D. Cal. Oct. 29, 2018) (finding reasonable suspicion to detain where an officer observed a bulge that appeared to be a firearm, supporting belief of a Section 25850 violation). Accordingly, Plaintiff fails to allege an absence of probable cause for Plaintiff's arrest in violation of Section 25850(a).

With respect to Plaintiff's alleged violation of Section 32310(a), while Plaintiff fails to allege any fact regarding a large-capacity magazine in the FAC, Plaintiff appears to concede the police officers found a "high-capacity magazine" in Plaintiff's vehicle. Dkt. 32 at 2. Although it is unclear to the Court whether Plaintiff was arrested under Section 32310(a),[4] because the police officers found Plaintiff in possession of a large-capacity magazine in violation of Section 32310(c), probable cause existed as to Plaintiff's arrest. See District of Columbia v. Wesby, 583 U.S. 48 (2018) ("Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking"); Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 920 (9th Cir. 2001) (ruling that under California law, a warrantless arrest by a peace officer for a misdemeanor is lawful only if the officer has reasonable cause to believe the misdemeanor was committed in the officer's presence). Accordingly, Plaintiff fails to allege an absence of probable cause for Plaintiff's arrest in violation of Section 32310(a) or Section 32310(c).

Nevertheless, Plaintiff argues his arrest falls within the exception under Nieves, where officers have probable cause but typically would choose not to exercise their discretion to do so. Dkt. 32 at 22-23. Plaintiff seeks to support his argument by alleging "[t]he plaintiff's evidence of

---

[4] It is unclear to the Court whether Plaintiff was in fact arrested for violation of Section 32310(a). Based on the misdemeanor complaint, dkt.31-1, Declaration of Yury A. Kolesnikov, Exs. 1-2, Plaintiff was charged and arrested for violations of Section 25850 and charged with violation of California Vehicle Code Section 4000, subdivision (a)(1), an infraction for driving an unregistered motor vehicle upon a highway, id. Further, while Plaintiff alleges he was arrested for violation of Section 32310(a), FAC ¶ 39, which prohibits the manufacturing and sale of large-capacity magazines, California Penal Code Section 32310(a), Defendants argue Plaintiff was arrested for violation of Section 32310(c), Mot. at 6, which prohibits the possession of large-capacity magazines, California Penal Code Section 32310(c). Regardless, as discussed, because Plaintiff was in possession of a large-capacity magazine, the police officers had probable cause to arrest Plaintiff for violation of Section 32310(c).

reviewing 215 felony indictments and finding none for similar conduct exemplifies the type of objective proof now sufficient to survive dismissal" and "for [Plaintiff], evidence that no other citizens were publicly labeled 'assassins' without criminal charges would easily satisfy this relaxed standard." Id. at 22. However, Plaintiff fails to provide the purported evidence or allege any additional facts regarding the evidence besides the above conclusory statements. See e.g., Bjorklund v. Cnty. of Santa Barbara, No. CV 23-2140-CBM-RAOx, 2024 WL 3009313, at *2 (C.D. Cal. Jan. 30, 2024) (finding plaintiff's statement that "never before had SB County law enforcement officials brought criminal charges against a marijuana cultivation and distribution business that purported to operate in compliance with state law authorizing such businesses" conclusory, and holding the complaint failed to allege sufficient nonconclusory facts to support application of Nieves's narrow exception). Accordingly, Plaintiff fails to allege his arrest falls within the exception under Nieves. See Id.; Drew v. Yavapai, Cnty. of, No. CV-24-08073-PCT-KML (MTM), 2025 WL 1576709, at *6 n.2 (D. Ariz. June 4, 2025) (finding plaintiff failed to allege sufficient facts to "take advantage of the 'Nieves exception'").

Hence, because Plaintiff fails to allege (1) there was a substantial causal relationship between the constitutionally protected activities and the adverse actions, or (2) his arrest falls within the exception under Nieves, Plaintiff fails to state a claim for First Amendment retaliation. See Powelson v. Sausalito Police Dep't, 701 F. Supp. 3d 965, 978 (N.D. Cal. 2023) (dismissing plaintiff's First Amendment retaliation claim because the police officers had probable cause to arrest plaintiff).

Accordingly, Defendant's Motion is **GRANTED** with respect to Plaintiff's First Cause of Action.

## B. PLAINTIFF'S SECOND CAUSE OF ACTION FOR FAILURE TO TRAIN UNDER MONELL FAILS TO STATE A CLAIM

### 1. Applicable Law

Section 1983 prohibits "the deprivation of any rights, privileges, or immunities" under color of state law. 42 U.S.C. § 1983. A government entity may be liable under Section 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson, 563 U.S. 51, 60 (2011) (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 692 (1978) ("Monell")). A municipality may not be sued under Section 1983 "for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694. Rather, a municipality is liable under Section 1983 only "when execution of [the local] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" Id.

As an initial matter, a plaintiff must allege an underlying constitutional violation by a municipal employee. See id. If a plaintiff sufficiently alleges an underlying constitutional violation, a plaintiff may establish municipal liability under Section 1983 by showing: (1) the alleged constitutional violation was committed "pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity," (2) the constitutional violation was committed by a government official with "final policy-making authority," or (3) a government official with "final policy-making authority" ratified a subordinate's unconstitutional conduct and the basis for it. Gillette v. Delmore, 979 F.2d 1342,

1346 (9th Cir. 1992) (internal quotation marks omitted).  Alternatively, a plaintiff may establish municipal liability under Section 1983 by showing a municipality failed to train its employees and such failure to train amounts to "deliberate indifference" to the constitutional rights of the persons with whom the employees come into contact.  City of Canton v. Harris, 489 U.S. 378, 388 (1988).

Under the failure to train theory, a pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train.  Connick, 563 U.S. at 62.  However, a pattern is not necessary when the unconstitutional consequences of failing to train are so patently obvious that a city could be liable under Section 1983 without proof of a pre-existing pattern of violations.  See City of Canton, 489 U.S. at 390 (finding that when the "need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need").

**2.    Analysis**

Here, Plaintiff fails to state a claim for failure to train under Monell because, for the reasons stated above, Plaintiff fails to allege any underlying violation of his constitutional rights.  See Zwarg v. City of San Luis Obispo, No. CV 21-3525-DMG-AFMx, 2022 WL 2189538, at *3 (C.D. Cal. Feb. 16, 2022) (noting Plaintiff's Monell claims fail for failing to allege an underlying constitutional violation).  Further, even if Plaintiff sufficiently alleged an underlying constitutional violation,[5] Plaintiff still fails to allege sufficient facts in support of a Monell claim based on a failure to train theory.

Plaintiff alleges defendant County of Riverside "[f]ailed to adequately train employees regarding [] proper procedures for voluntary firearm disclosure; [] constitutional limits on searches; and [] medical care for detainees."  FAC ¶ 68.  Plaintiff also alleges defendant County of Riverside "[m]aintained inadequate policies regarding: [] public statements about ongoing investigations; and [] use of force protocols."  Id.  In support of his allegations, Plaintiff alleges defendant County of Riverside and RCSD have "a lengthy history of prior incidents" and cites five separate matters involving defendant County of Riverside or the RCSD.  Id. ¶ 72.  These include federal lawsuits alleging unlawful detention, unlawful searches, excessive force, and abuse by RCSD personnel; a defamation lawsuit brought against defendant Bianco; and a civil rights investigation initiated by the California Department of Justice into alleged unconstitutional policing practices and jail conditions within the RCSD.  Id.  However, to establish a Monell liability under the failure to train theory, Plaintiff must establish the municipality's training practices amounted to "deliberate indifference to the rights of persons with whom the untrained employees come into contact[,]" which generally requires showing "[a] pattern of similar constitutional violations by untrained employees[.]"  Connick, 563 U.S. at 61 (internal brackets omitted).  Here, none of the alleged prior incidents involve violations of the First Amendment right.  Accordingly, the FAC does not sufficiently allege a pattern of similar constitutional violations because Plaintiff fails to allege *any* facts supporting an

---

[5] While Plaintiff only alleges a standalone constitutional violation under the First Amendment, his Monell claim seems to be based upon other alleged constitutional violations, e.g., Eighth Amendment deliberate indifference to medical care.  First, the Court will not attempt to cobble together alleged facts to support an unidentified cause of action.  Second, even assuming Plaintiff had alleged an underlying constitutional violation, as discussed below, he fails to allege sufficient facts to support a Monell claim.

inference of a pattern of similar constitutional violations beyond the facts of this case. See Hyde v. City of Willcox, 23 F.4th 863, 875 (9th Cir. 2022) (ruling that "inadequate training policy itself cannot be inferred from a single incident"). Further, Plaintiff does not point to or allege any facts upon which the Court may conclude his claim falls within the limited circumstances where it is patently obvious that a defendant is deliberately indifferent. City of Canton, 489 at 390.

Thus, Plaintiff fails to state a Monell claim under the failure to train theory.[6] Accordingly, Defendants' Motion is **GRANTED** with respect to Plaintiff's Second Cause of Action.

## C. PLAINTIFF'S THIRD CAUSE OF ACTION FOR FAILURE TO INTERVENE FAILS TO STATE A CLAIM

### 1. Applicable Law

"Pursuant to a long line of civil cases, police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." United States v. Koon, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), rev'd on other grounds, 518 U.S. 81, 116 (1996). "[A]n officer who failed to intercede when his colleagues were depriving a victim of his Fourth Amendment right to be free from unreasonable force in the course of an arrest would, like his colleagues, be responsible for subjecting the victim to a deprivation of his Fourth Amendment rights." Id. However, officers may be held liable for failing to intercede only if they had a "realistic opportunity" to do so. Cunningham v. Gates, 229 F.3d 1271, 1290 (9th Cir. 2000), as amended (Oct. 31, 2000); see also Hughes v. Rodriguez, 31 F.4th 1211, 1223 (9th Cir. 2022).

### 2. Analysis

Here, Plaintiff fails to state a claim for failure to intervene against defendant County of Riverside because a county defendant cannot be held liable under Section 1983 on a respondeat superior theory. See Monell, 436 U.S. at 691 ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").[7]

---

[6] Plaintiff attempts to raise new legal theories for municipal liability under ratification and unconstitutional custom, practice, or policy in his Opposition to Defendants' Motion. Dkt. 32 at 25-27. Because such arguments introduce new legal theories not alleged in the FAC, the Court cannot consider these newly asserted allegations. See Forrett, 634 F. Supp. 3d at 765.

[7] The Court notes Plaintiff raises the Third Cause of Action against defendant County of Riverside and Doe Defendants 1 through 100. FAC at 22. With respect to the claim against Doe Defendants 1 through 100, because Plaintiff fails to sufficiently allege a constitutional violation, Plaintiff also fails to state a claim for failure to intervene against any Doe Defendant. Moreover, even assuming Plaintiff sufficiently alleged an underlying constitutional violation, Plaintiff only provides conclusory allegations that no intervention was made regarding the alleged excessive search, Plaintiff's medical requests, an alleged unauthorized medical exam, and denial of accommodation for Plaintiff's right to phone calls. FAC ¶ 79. Absent additional facts, Plaintiff's allegations are "conclusory and therefore insufficient to survive a motion to dismiss." Paredes v. City of San Jose, No. 22-CV-00758-BLF, 2022 WL 22891247, at *3 (N.D. Cal. Nov. 18, 2022) (citing Ove v. Gwinn, 264 F.3d 817, 821 (9th Cir. 2001); see also Manlove v. Cnty. of San Diego, 759 F. Supp. 3d 1057, 1066-67 (S.D. Cal. 2024) (finding plaintiff failed to allege failure to intervene

Accordingly, Defendants' Motion with respect to Plaintiff's Third Cause of Action against defendant County of Riverside is **GRANTED**.

### D.  PLAINTIFF IS GRANTED LEAVE TO AMEND

#### 1.  Applicable Law

A court should freely grant leave to amend a complaint dismissed for failure to state a claim. Fed. R. Civ. P. 15(a)(2); see also Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009).  The court may dismiss without leave to amend, however, "if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies."  Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (citations omitted).

#### 2.  Analysis

Here, the Court cannot conclude amendment would be futile because it is possible "allegation of other facts consistent with the challenged pleading could . . . cure the deficiency." Telesaurus VPC, LLC, 623 F.3d at 1003.  In addition, leave to amend would not prejudice Defendants or produce undue delay.  Accordingly, Plaintiff's First, Second, and Third Causes of Action are **DISMISSED with leave to amend**.[8]

---

because "[a]part from the conclusory allegation that officers failed to intervene in contravention of his constitutional rights, Plaintiff identifies no facts indicating who failed to intervene, how, or whether anyone had the opportunity to intercede. Without these basic facts, Plaintiff cannot plead a constitutional claim based on the intervention theory.") (citing Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982)).  Accordingly, Plaintiff's Third Cause of Action against Doe Defendants 1 through 100 is **DISMISSED with leave to amend**.

[8] The Court notes while Plaintiff may have additional facts to allege, allegations in an amended complaint "must not be inconsistent with those already alleged" in the original pleading. Lacey v. Maricopa Cnty., 693 F.3d 896, 939 (9th Cir. 2012) (en banc).  Further, although Plaintiff's federal claims have been dismissed with leave to amend, "[i]f Plaintiff is unable to amend [his] complaint to pursue [his] federal claims, it will be more efficient for the state court to evaluate Plaintiff's state law claims and the values of economy, convenience, fairness, and comity will favor dismissing the state law claims without prejudice to refiling in state court." Fotinos v. Fotinos, No. C 12-953 CW, 2013 WL 1195644, at *1 n.2 (N.D. Cal. Mar. 22, 2013).  Accordingly, the Court declines to address the state law claims until Plaintiff has adequately pled his federal claims.  See Taylor v. Wells Fargo Bank, N.A., No. CV-11-08393-DMG-SSx, 2012 WL 13009000, at *3 (C.D. Cal. Jan. 31, 2012) ("Until Plaintiff alleges valid federal claims against Defendants, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and need not address their viability at this juncture").  The Court notes if Plaintiff fails to state a federal claim in the amended complaint, the Court is inclined to dismiss the state law claims without prejudice to Plaintiff filing in state court.  For the same reasons, the Court declines to rule on Defendants' anti-SLAPP motion at this time.  Defendants may renew the motion at a later stage, if appropriate, should Plaintiff sufficiently plead federal claims in the amended Complaint.  See Martin v. Jensen, No. CV-23-04642-VBF-DFM, 2023 WL 11195907, at *8 (C.D. Cal. Nov. 17, 2023).

# V.
# CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss and Strike Plaintiff's FAC is **GRANTED in PART**. Defendants' request for dismissal of Plaintiff's First, Second, and Third Causes of Action is **GRANTED**, and such claims are **DISMISSED with leave to amend**. The Court declines to address Defendants' Anti-SLAPP Motion with respect to Plaintiff's Fourth, Fifth, and Sixth Causes of Action.

**No later than fourteen (14) days from this order**, Plaintiff shall file (1) a statement that he intends to proceed on the remaining claims in the FAC, or (2) a Second Amended Complaint. If Plaintiff chooses to file an amended complaint, Plaintiff shall lodge as an exhibit a redlined version of the amended pleading indicating all additions and deletions of material. **Plaintiff is expressly warned that failure to timely file a statement of intent or Second Amended Complaint may result in sanctions including dismissal for failure to prosecute and comply with Court orders.** See Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED**.