

1  Eugene P. Ramirez (State Bar No. 134865)
      *eugene.ramirez@manningkass.com*
2  Anthony J. Ellrod (State Bar No. 136574)
      *anthony.ellrod@manningkass.com*
3  Kayleigh Andersen (State Bar No. 306442)
      *kayleigh.andersen@manningkass.com*
4  Natalya D. Vasyuk (State Bar No. 307419)
      *natalya.vasyuk@manningkass.com*
5  **MANNING & KASS**
6  **ELLROD, RAMIREZ, TRESTER LLP**
7  801 S. Figueroa St, 15th Floor
8  Los Angeles, California  90017-3012
9  Telephone:  (213) 624-6900
10  Facsimile:   (213) 624-6999

*Attorneys for Defendants Chad Bianco and*
*County of Riverside*



FILED
CLERK, U.S. DISTRICT COURT

OCT 1 4 2025

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VEM MILLER, | Case No.: 5:25-cv-00629 KK (DTB) |
| Plaintiff, | **Defendants' Notice of Motion and Motion to Dismiss and Special Motion to Strike Plaintiff's Second Amended Complaint; Memorandum of Points and Authorities in Support Thereof** |
| v. | |
| CHAD BIANCO, in his individual and official capacities; COUNTY OF RIVERSIDE, a municipal entity; and DOES 1 through 100, | *Filed concurrently with Declaration of Eugene P. Ramirez, Notice of Manual Lodging, and [Proposed] Order* |
| Defendants. | Judge:        Hon. Kenly Kiya Kato |
| | Courtroom: 3 |
| | Date:         December 11, 2025 |
| | Time:         9:30 a.m. |
| | Complaint Filed:    March 10, 2025 |
| | Trial Date:           Not Yet Set |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on December 11, 2025, at 9:30 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Kenly Kiya Kato, located in Courtroom 3 of the George E. Brown, Jr. United States Courthouse, 3470 12th Street, Riverside, California 92501, Defendants Chad Bianco and County of Riverside ("Defendants") will and hereby do move this Court to (1) dismiss Plaintiff's second amended complaint ("SAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6); and (2) strike Plaintiff's SAC pursuant to California's anti-SLAPP statute, California Code of Civil Procedure § 425.16. This motion is made upon the following grounds:

1.     Plaintiff's first cause of action for violation of the Fourth and Fourteenth Amendments fails to state a claim upon which relief can be granted because the SAC reveals that there was probable cause for the detention, search, and seizure;

2.     Plaintiff's second cause of action for violation of the First Amendment fails to state a claim upon which relief can be granted because there was probable cause for the arrest and because the SAC fails to plausibly allege a causal link;

3.     Plaintiff's third cause of action for municipal liability based on failure to train fails to state a claim upon which relief can be granted because there is no underlying constitutional violation, the SAC fails to plead something more than a single, isolated incident, and the SAC does not plausibly allege that any failure to train was done with deliberate indifference or was the moving cause of Plaintiff's injuries;

4.     Plaintiff's fourth cause of action for failure to intervene fails to state a claim upon which relief can be granted because there is no underlying constitutional violation and because the County of Riverside cannot be liable under § 1983 on the theory of vicarious liability;

5.     Plaintiff's fifth, sixth, seventh, eighth, and ninth causes of action for slander, libel, intentional infliction of emotional distress ("IIED"), violation of the Bane Act, and defamation by implication are subject to a motion to strike because

Defendants' Motion to Dismiss and Anti-SLAPP Motion re: Plaintiff's Second Amended Complaint

1  they arise out of protected activity and Plaintiff cannot demonstrate a reasonable

2  likelihood of prevailing on the merits of these claims because these causes of action

3  are absolutely barred under the "official duty" and/or "litigation" privileges;

4       6.    Plaintiff's fifth and sixth causes of action for slander and libel are subject

5  to a motion to strike because Plaintiff cannot demonstrate a reasonable likelihood of

6  prevailing on the merits of these claims because the challenged oral and written

7  statements are privileged under California law;

8       7.    Plaintiff's fifth cause of action for slander is subject to a motion to strike

9  because Plaintiff cannot demonstrate a reasonable likelihood of prevailing on the

10 merits of this claim because no reasonable factfinder could conclude that the contested

11 statements implied an assertion of an objective fact that was slanderous;

12      8.    Plaintiff's seventh cause of action for IIED is subject to a motion to strike

13 because Plaintiff cannot demonstrate a reasonable likelihood of prevailing on the

14 merits of this claim because the IIED claim is duplicative and redundant of Plaintiff's

15 slander and libel causes of action;

16      9.    Plaintiff's eighth cause of action for violation of the Bane Act is subject

17 to a motion to strike because Plaintiff cannot demonstrate a reasonable likelihood of

18 prevailing on the merits of this claim because there is no underlying constitutional

19 violation, the SAC does not allege an independent threat or coercion, and the SAC

20 fails to plausibly allege any specific intent to violate constitutional rights; and

21      10.   Plaintiff's ninth cause of action for defamation by implication is subject

22 to a motion to strike because Plaintiff cannot demonstrate a reasonable likelihood of

23 prevailing on the merits of this claim because no reasonable factfinder could conclude

24 that the contested statements implied an assertion of an objective fact and because the

25 challenged statements were substantially true.

26      This motion is based on this notice of motion and motion, the attached

27 memorandum of points and authorities, the concurrently-filed declaration of Eugene

28 P. Ramirez and notice of manual lodging (together with all of the exhibits), all of the

**MANNING | KASS**

pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

## STATEMENT REGARDING CONFERENCE OF COUNSEL

This motion is made following a telephonic conference of counsel pursuant to Civil L.R. 7-3, which took place on September 30, 2025. Eugene P. Ramirez and Yury A. Kolesnikov participated on behalf of Defendants and Ethan Bearman participated on behalf of Plaintiff. The conference lasted approximately 20 minutes. During the conference, the parties engaged in thorough discussion of their respective positions and legal arguments with regard to each cause of action and Defendants' anticipated motions. Despite their good-faith efforts, the parties were unable to reach any agreement, thus necessitating the filing of the present motions.

DATED: October 10, 2025            Respectfully submitted,

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By:        /s/ Eugene P. Ramirez
_____
Eugene P. Ramirez
Anthony J. Ellrod
Kayleigh Andersen
Natalya D. Vasyuk

*Attorneys for Defendants Chad Bianco and*
*County of Riverside*

**MANNING | KASS**

Defendants' Motion to Dismiss and Anti-SLAPP Motion re: Plaintiff's Second Amended Complaint

## MEMORANDUM OF POINTS AND AUTHORITIES

### Table of Contents

I.      INTRODUCTION ........................................................................................ 1

II.     BACKGROUND .......................................................................................... 3

III.    LEGAL STANDARD .................................................................................. 4

    A.    Motion to Dismiss for Failure to State a Claim ................................... 4

    B.    Special Motion to Strike Under California's Anti-SLAPP Statute ....... 5

IV.     INCORPORATION BY REFERENCE ......................................................... 5

V.      ARGUMENT ............................................................................................... 6

    A.    The Court Should Dismiss All of Plaintiff's Federal Claims ............... 6

        1.    No Violation of the Fourth and Fourteenth Amendments ............ 6

            a.    Deputies Had Probable Cause to Arrest Plaintiff .............. 6

            b.    The Search Was Reasonable ................................................ 8

        2.    No First Amendment Retaliation .................................................. 9

        3.    Plaintiff's *Monell* Claim Fails ................................................... 10

        4.    Failure-to-Intervene Claim Fails ............................................... 11

    B.    The Court Should Grant Defendants' Anti-SLAPP Motion and
        Strike the State-Law Causes of Action ............................................. 11

        1.    Plaintiff's Claims Arise Out of Protected Activity ..................... 11

        2.    Plaintiff Cannot Establish Reasonable Probability of
            Prevailing on the Merits of the State-Law Claims ..................... 13

            a.    Absolutely Barred by the "Official Duty" Privilege ........ 14

            b.    Absolutely Barred by the Litigation Privilege ................. 17

            c.    Plaintiff's Defamation Claims Fail Because of the
               "Privileged" Nature of the Challenged Statements .......... 19

            d.    Slander Claim Fails .......................................................... 19

            e.    Plaintiff's Defamation-by-Implication Claim Fails ......... 24

               i.    Implication of Criminal Intent .............................. 25

MANNING | KASS

MK

ii.      Implication of Deception ...................................... 26

iii.     Implication of Extremist Affiliation ..................... 26

f.      IIED Claim Fails ............................................................ 27

g.      No Violation of the Bane Act ...................................... 27

VI.    CONCLUSION ................................................................................ 28

CERTIFICATION PURSUANT TO LOCAL RULE 11-6.2 ................................... 30

**MANNING | KASS**

Defendants' Motion to Dismiss and Anti-SLAPP Motion re: Plaintiff's Second Amended Complaint

**Table of Authorities**

**Cases**

*Action Apartment Ass'n, Inc. v. City of Santa Monica,*
    41 Cal. 4th 1232 (2007).................................................................17

*Arizona Students' Ass'n v. Arizona Bd. of Regents,*
    824 F.3d 858 (9th Cir. 2016)..........................................................9

*Arizona v. Gant,*
    556 U.S. 332 (2009) ..................................................................8, 9

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................5, 10

*Balzaga v. Fox News Network, LLC,*
    173 Cal. App. 4th 1325 (2009)......................................................18

*Barr v. Matteo,*
    360 U.S. 564 (1959) ..............................................................14, 15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ....................................................................4

*Benavidez v. Cnty. of San Diego,*
    993 F.3d 1134 (9th Cir. 2021).........................................................5

*Carroll v. United States,*
    267 U.S. 132 (1925) ....................................................................8

*Collins v. Virginia,*
    584 U.S. 586 (2018) ....................................................................8

*Connick v. Thompson,*
    563 U.S. 51 (2011) .....................................................................10

*Copp v. Paxton,*
    45 Cal. App. 4th 829 (1996)...........................................................16

*CoreCivic, Inc. v. Candide Grp., LLC,*
    46 F.4th 1136 (9th Cir. 2022).................................................5, 11, 14

*Couch v. San Juan Unified Sch. Dist.,*
    33 Cal. App. 4th 1491 (1995)....................................................20, 27

*Crowe v. Cnty. of San Diego,*
    608 F.3d 406 (9th Cir. 2010)........................................20, 23, 24, 25



iii

Defendants' Motion to Dismiss and Anti-SLAPP Motion re: Plaintiff's Second Amended Complaint

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010)................................................................6, 7

*Digerati Holdings, LLC v. Young Money Ent., LLC*,
    194 Cal. App. 4th 873 (2011).................................................................14

*Disabled Rights Action Committee v. Las Vegas Events, Inc.*,
    375 F.3d 861 (9th Cir. 2004)..................................................................17

*District of Columbia v. Wesby*,
    583 U.S. 48 (2018) ...............................................................................6, 8

*Doe v. State of California*,
    8 Cal. App. 5th 832 (2017).....................................................................28

*FilmOn.com Inc. v. DoubleVerify Inc.*,
    7 Cal. 5th 133 (2019)............................................................................13

*Garamendi v. Golden Eagle Ins. Co.*,
    128 Cal. App. 4th 452 (2005).................................................................18

*Gilton v. City & Cnty. of San Francisco*,
    2023 WL 5600082 (N.D. Cal. Aug. 29, 2023).......................................11

*Green v. Cortez*,
    151 Cal. App. 3d 1068 (1988)................................................................18

*Hagberg v. Cal. Fed. Bank*,
    32 Cal. 4th 350 (2004)...........................................................................18

*Hayward v. Watsonville Reg.-Pajaronian & Sun*,
    265 Cal. App. 2d 255 (1968)..................................................................18

*Herring Networks, Inc. v. Maddow*,
    8 F.4th 1148 (9th Cir. 2021)..............................................5, 19, 20, 24

*Hyde v. City of Willcox*,
    23 F.4th 863 (9th Cir. 2022)..................................................................11

*Issa v. Applegate*,
    31 Cal. App. 5th 689 (2019)......................................................24, 25, 26

*Kenne v. Stennis*,
    230 Cal. App. 4th 953 (2014).................................................................27

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018)................................................................5, 7

MANNING | KASS

iv

*Kilgore v. Younger,*
    30 Cal. 3d 770 (1982).................................................................14, 15, 18

*Lockett v. Cnty. of Los Angeles,*
    977 F.3d 737 (9th Cir. 2020)...................................................................10

*Makaeff v. Trump Univ., LLC,*
    715 F.3d 254 (9th Cir. 2013)...................................................................14

*Maranatha Corr., LLC v. Dep't of Corr. & Rehab.,*
    158 Cal. App. 4th 1075 (2008)........................................................14, 15, 16

*Maryland v. Dyson,*
    527 U.S. 465 (1999) .................................................................................8

*Monell v. Dep't of Soc. Servs. of City of New York,*
    436 U.S. 658 (1978).................................................................................11

*Morrow v. L.A. Unified School District,*
    149 Cal. App. 4th 1424 (2007).................................................................15

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,*
    429 U.S. 274 (1977) ...............................................................................10

*Nieves v. Bartlett,*
    587 U.S. 391 (2019) ...................................................................................9

*Nygard, Inc. v. Uusi-Kerttula,*
    159 Cal. App. 4th 1027 (2008).................................................................13

*Padilla v. City of Los Angeles,*
    2023 WL 8610526 (C.D. Cal. June 29, 2023) .............................................7

*Reese v. Cnty. of Sacramento,*
    888 F.3d 1030 (9th Cir. 2018)..................................................................28

*Riley v. California,*
    573 U.S. 373 (2014) ..................................................................................8

*Rubin v. Green,*
    4 Cal. 4th 1187 (1993).........................................................................17, 18

*Rudwall v. Blackrock, Inc.,*
    2006 WL 3462792 (N.D. Cal. Nov. 30, 2006)...........................................27

*Rusheen v. Cohen,*
    37 Cal. 4th 1048 (2006) ...........................................................................19

v

*San Diegans for Open Gov't v. San Diego State Univ. Rsch. Found.*,
    13 Cal. App. 5th 76 (2017)...................................................................13

*Saroyan v. Burkett*,
    57 Cal. 2d 706 (1962)......................................................................15

*Shepard v. Perez*,
    609 F. App'x 942 (9th Cir. 2015)....................................................11

*Silberg v. Anderson*,
    50 Cal. 3d 205 (1990)...............................................................17, 18

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011)........................................................10

*Terry v. Ohio*,
    392 U.S. 1 (1968)...............................................................................6

*United States v. Borneo, Inc.*,
    971 F.2d 244 (9th Cir.1992)...........................................................17

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003)........................................................6, 7

*Wilbanks v. Wolk*,
    121 Cal. App. 4th 883 (2004).........................................................12

*Williamson v. City of Nat'l City*,
    23 F.4th 1146 (9th Cir. 2022)........................................................27

**Constitutions and Statutes**

U.S. CONST. amend IV.............................................................................6

CAL. CONST. art. V, § 13.........................................................................15

CAL. CONST. art. XI, § 1.........................................................................15

CAL. CIV. CODE § 44...............................................................................19

CAL. CIV. CODE § 45...............................................................................19

CAL. CIV. CODE § 46...............................................................................19

CAL. CIV. CODE § 47.........................................................................14, 17

CAL. CIV. CODE § 52.1............................................................................27

CAL. CIV. PROC. CODE § 425.16..........................................................5, 12

Defendants' Motion to Dismiss and Anti-SLAPP Motion re: Plaintiff's Second Amended Complaint

CAL. GOV'T CODE § 26600 ...................................................................... 15

CAL. PEN. CODE § 25850 ..................................................................... 7, 8

CAL. PEN. CODE § 32310 ........................................................................ 7

**Rules**

FED. R. CIV. P. 10 .............................................................................. 6, 7

FED. R. EVID. 201 ................................................................................ 17

Defendants' Motion to Dismiss and Anti-SLAPP Motion re: Plaintiff's Second Amended Complaint

## I.    INTRODUCTION

Plaintiff brings this action against Sheriff Chad Bianco and County of Riverside, alleging constitutional violations and various state-law claims following Plaintiff's arrest on gun charges and Sheriff Bianco's press conference and interviews related to the incident.  The Court previously dismissed Plaintiff's federal law claims, concluding that the deputies had probable cause to arrest Plaintiff, which defeated Plaintiff's First Amendment claim, and that Plaintiff failed to plausibly allege a *Monell* claim or a failure-to-intervene claim.  Although Plaintiff was granted leave to amend, the second amended complaint ("SAC") remains woefully deficient.

Indeed, Plaintiff concedes that he had a handgun and a shotgun in his vehicle as he made his way to President Trump's rally on October 12, 2024.  He also does not dispute that he was in possession of a large-capacity magazine.  This was only three months after the first failed assassination attempt on President Trump at Butler, Pennsylvania (7/13/24), and less than a month after the second failed assassination attempt at West Palm Beach, Florida (9/15/24).

As the Court previously concluded, the foregoing facts clearly demonstrate that ***the deputies had probable cause to detain and arrest Plaintiff*** for possession of a loaded firearm in a vehicle in a public place and a large-capacity magazine in violation of California Penal Code §§ 25850(a) and 32310.  Although Plaintiff now alleges that the firearms were *not* "loaded" (¶ 28),[1] the Court can and should disregard that allegation as it is directly contradicted ***by Plaintiff himself*** in an audio that Plaintiff has incorporated into his complaint.  Specifically, Plaintiff admits that he audio-recorded his interaction with the deputies on the day of the incident and provides the Court with a link to a "complete, true, and accurate recording of the first 3 hours, 26

---

[1] All "¶ __" references are to the SAC, Dkt. No. 41.  All "Ex. __" references are to the exhibits attached to the supporting Declaration of Euguene P. Ramirez ("Ramirez Decl.").  Unless otherwise noted, all internal citations and quotation marks are omitted, and all emphasis is added.

Defendants' Motion to Dismiss and Anti-SLAPP Motion re: Plaintiff's Second Amended Complaint

minutes, and 58 seconds from Mr. Miller's audio device captured on October 12, 2024." *See* ¶ 30. Plaintiff's audio can be downloaded from the following link: https://drive.google.com/file/d/14RNILF2sbGvc2_SQRlxbqsbJ-Hw8RvhX. A copy of the audio is also being submitted as **Exhibit F** to the Ramirez Declaration.

The following exchange takes place between 3:55 and 4:20 of the audio:

| | |
|---|---|
| Deputy: | Where are the firearms at? |
| Plaintiff: | So it's, it's in the back, sir. |
| Deputy: | OK. How many firearms are in there? |
| Plaintiff: | So, I have a shotgun and a handgun in there. |
| Deputy: | OK. Do you have any felonies or anything else? |
| Plaintiff: | Nothing. |
| Deputy: | Are those firearms registered? |
| Plaintiff: | Yes, sir. |
| Deputy: | ***Are … is it loaded?*** |
| Plaintiff: | No, the shotgun is not loaded. ***The handgun is loaded, yeah.*** |
| Deputy: | I'm going to detain you right now for your … my safety. Do you understand? |
| Plaintiff: | Yeah, I understand. |

Ex. F at 3:55–4:20.

Plaintiff's own audio thus confirms that he was in the possession of a loaded handgun in violation of Penal Code § 25850(a) ***prior*** to the deputy's decision to detain him. As such, Plaintiff's unlawful detention claim fails. Plaintiff's unreasonable search and seizure claims similarly fail because the *subsequent* search of his vehicle was justified by the "automobile" and "search incident to arrest" exceptions

The SAC's failure to plead lack of probable cause for the arrest also dooms Plaintiff's First Amendment retaliation claim. That claim also fails because SAC does not to plausibly allege any causal link. The Court should dismiss the *Monell* claim for lack of an underlying constitutional violation and because the SAC only alleges a single, isolated incident and fails to plausibly plead deliberate indifference. The failure-to-intervene claim fails because it cannot be asserted against the County.

Defendants' Motion to Dismiss and Anti-SLAPP Motion re: Plaintiff's Second Amended Complaint

1    The Court should also strike Plaintiff's state-law claims for slander, libel,

2  intentional infliction of emotional distress ("IIED"), violation of the Bane Act, and

3  defamation by implication.  California's anti-SLAPP statute applies to Plaintiff's

4  state-law claims because Sheriff Bianco's challenged statements were made "in

5  connection with a public issue" or "an issue of public interest"—arrest of a suspect

6  with weapons at President Trump's rally, which generated extensive public interest

7  and media coverage (as the SAC concedes).  Furthermore, Plaintiff cannot

8  demonstrate that he is likely to prevail on his state-law claims because all of the claims

9  are barred under the "official duty" and/or "litigation" privileges.

10    Finally, Plaintiff's slander and defamation-by-implication claims fail on the

11  merits because, viewing the challenged statements in the full context of the press

12  conference and interview videos, no reasonable person would interpret Sheriff

13  Bianco's statements to be assertions of objective fact (as opposed to opinions) or to

14  imply that Plaintiff *in fact* wanted to kill the President.  Instead, all of the videos

15  reveal that Sheriff Bianco was merely expressing his personal opinion and belief

16  based on the available information and disclosed all of the facts underlying his

17  opinion.  Plaintiff's other challenged statements also fail to state a claim.

18    For all these reasons, the Court should grant the motion to dismiss and motion

19  to strike in full and dismiss the SAC with prejudice and without leave to amend.

20  **II.    BACKGROUND**

21    Plaintiff alleges that he is a long-time political supporter of President Trump.

22  ¶¶ 1–2, 23–24.  On October 12, 2024, Plaintiff was on his way to President Trump's

23  rally at Coachella, Riverside County.  ¶¶ 4, 25.  Despite the high publicity of the two

24  prior assassination attempts on President Trump, Plaintiff inexplicably had two

25  firearms in his vehicle as he made his way to the rally:  "a shotgun and ... a handgun."

26  ¶¶ 26–28.  More egregiously, *the handgun was loaded*, and Plaintiff had *at least one*

27  *large-capacity magazine* in his vehicle.  *See* ¶ 39; *see also* Ex. F at 3:55–4:10

28  (Plaintiff admitting in his own audio that "the handgun *is* loaded").

MK MANNING | KASS

Plaintiff alleges that before attempting to enter the venue parking area, he voluntarily drove up to a Riverside County Sheriff's Deputy and voluntarily disclosed that he had two firearms in his vehicle. ¶¶ 26–27. According to Plaintiff, he offered to have the deputies hold the firearms, presented a valid identification and entry passes, and made no attempt to enter the venue with the firearms. ¶¶ 27–28. Plaintiff alleges that following his voluntary disclosure, he was handcuffed, and 10 to 15 officers and agents conducted an extensive search of his vehicle. ¶¶ 29, 32.

Plaintiff was arrested and taken to jail. ¶¶ 34, 37. He was released after being cited with two misdemeanor violations: (1) Penal Code § 25850(a) (carrying a loaded firearm); and (2) Penal Code § 32310 (possessing a large-capacity magazine). ¶ 39.

Given the high-profile nature of the incident, and the wide-spread attention it immediately received, Sheriff Bianco held a press conference the following day to provide updates for the public and to answer questions. Plaintiff alleges that Sheriff Bianco made defamatory statements regarding Plaintiff during the press conference and in interviews relating to the incident. ¶¶ 42–45. He also alleges that Sheriff Bianco sent a defamatory text message to *The Epoch Times*. ¶ 41. Plaintiff alleges additional defamatory statements in March and April 2025. ¶¶ 49–51.

Plaintiff brings four federal claims: (1) Fourth and Fourteenth Amendment, (2) First Amendment, (3) municipal liability for failure to train, and (4) failure to intervene. ¶¶ 57–115. He also brings five state-law claims: (5) slander *per se*, (6) libel *per se*, (7) IIED, (8) Bane Act, and (9) defamation by implication. ¶¶ 116–163.

## III.    LEGAL STANDARD

### A.    Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A plausible claim includes factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir.

4

1  2021).  "Threadbare recitals of the elements of a cause of action, supported by mere

2  conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

3       **B.    Special Motion to Strike Under California's Anti-SLAPP Statute**

4       "California's anti-SLAPP statute allows a defendant to file a 'special motion to

5  strike' a plaintiff's complaint, and involves a two-step inquiry."  *Herring Networks,*

6  *Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021) (quoting CAL. CIV. PROC. CODE

7  § 425.16(b)(1)).  "The first step requires the plaintiff to make a *prima facie* showing

8  that the plaintiff's suit arises from an act in furtherance of the defendant's

9  constitutional right to free speech."  *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th

10  1136, 1140 (9th Cir. 2022).  "At the second step, if, as here, the anti-SLAPP motion

11  to strike challenges only the legal sufficiency of a claim, a district court should apply

12  the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim

13  is properly stated."  *Id.*  Courts are directed to "broadly" construe the anti-SLAPP

14  statute.  *See* CAL. CIV. PROC. CODE § 425.16(a).

15  **IV.   INCORPORATION BY REFERENCE**

16       "[I]ncorporation-by-reference is a judicially created doctrine that treats certain

17  documents as though they are part of the complaint itself."  *Khoja v. Orexigen*

18  *Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  "The doctrine prevents

19  plaintiffs from selecting only portions of documents that support their claims, while

20  omitting portions of those very documents that weaken—or doom—their claims."

21       "[A] defendant may seek to incorporate a document into the complaint if the

22  plaintiff *refers extensively* to the document or the document *forms the basis* of the

23  plaintiff's claim."  *Id.*  Here, Plaintiff's SAC refers extensively to Sheriff Bianco's

24  press conference, his interviews, and the several news articles pertaining to those

25  interviews.  And the SAC premises Plaintiff's state-law claims on the statements

26  allegedly made by Sheriff Bianco at the press conference and in interviews.  As such,

27  the videos from the challenged press conference and interviews and the challenged

28  news articles are incorporated into the SAC.  *See Khoja*, 899 F.3d at 1002; *Herring*,

MK MANNING | KASS

8 F.4th at 1154 (observing that the court properly considered the complaint and the challenged article containing the allegedly defamatory statements).

In addition, a document attached to the complaint is considered part of the complaint for all purposes. *See* FED. R. CIV. P. 10(c). Here, Plaintiff references and invites the Court to download the "complete, true, and accurate recording" of the incident. *See* ¶ 30. Plaintiff also refers extensively to the audio recording in the SAC. *See, e.g.*, ¶¶ 27–30. Accordingly, the Court may properly consider the audio on the motion to dismiss and is *not* required to accept as true Plaintiff's allegations that are contradicted by the audio. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (the court may "consider … documents attached to the complaint" and "may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)"); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("We are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice … .").

## V.    ARGUMENT

### A.    The Court Should Dismiss All of Plaintiff's Federal Claims

#### 1.    No Violation of the Fourth and Fourteenth Amendments

Plaintiff concedes that his initial detention was a "lawful" *Terry* stop based on reasonable suspicion. *See* ¶ 62(a); *see also Terry v. Ohio*, 392 U.S. 1, 30 (1968). Plaintiff, however, challenges his subsequent arrest and the search of his car.

##### a.    Deputies Had Probable Cause to Arrest Plaintiff

The Fourth Amendment protects "[t]he right of the people to be secure in their persons … and effects, against *unreasonable* searches and seizures." U.S. CONST. amend IV. "A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018). Here, Plaintiff's own allegations and the audio that he references and incorporates into the SAC reveal that the deputies had probable cause to arrest him for violations of §§ 25850(a) and 32310.

*First*, § 25850 prohibits carrying "a loaded firearm … in a vehicle while in any public place." CAL. PEN. CODE § 25850(a). The SAC admits that Plaintiff had a shotgun and a handgun in his vehicle and that he was in a public place. ¶¶ 25–28. In addition, Plaintiff's own audio recording confirms that the handgun was loaded:

> Deputy:      ***Are … is it loaded?***
> Plaintiff:    No, the shotgun is not loaded. ***The handgun is loaded, yeah.***

Ex. F at 4:07–4:14. Accordingly, based on Plaintiff's own admissions, the deputies had probable cause to arrest Plaintiff for carrying a loaded firearm in a vehicle in a public place in violation of § 25850(a). *See, e.g.*, *Padilla v. City of Los Angeles*, 2023 WL 8610526, at *8 (C.D. Cal. June 29, 2023) (officers had probable cause to arrest the driver after he voluntarily disclosed to them that he had a gun in his car).

*Second*, § 32310 prohibits possession of "any large-capacity magazine." CAL. PEN. CODE § 32310(c). Here, Plaintiff was cited for possession of a large-capacity magazine and does not allege that he was *not* in possession of one. *See* ¶ 39.

Plaintiff's new allegations cannot defeat probable cause. In the SAC, Plaintiff alleges that the firearms were *not* "loaded." ¶ 28. But this is ***directly contradicted*** by Plaintiff's own contemporaneous statement to the deputy, where Plaintiff admits that the handgun ***was loaded***. *See* Ex. F at 4:07–4:14. The audio recording is referenced extensively through the SAC (¶¶ 27–30) and, thus, is a part of the SAC for all purposes. *See* FED. R. CIV. P. 10(c); *Khoja*, 899 F.3d at 1002; *see also Ritchie*, 342 F.3d at 908; *Daniels-Hall*, 629 F.3d at 998. The audio also confirms that Plaintiff's detention took place only ***after*** he admitted to having a loaded firearm in his vehicle in a public place, thus justifying his arrest. *See* Ex. F. at 4:07–4:20.

In sum, once Plaintiff disclosed that he had a loaded gun in his car, the deputies had probable cause to arrest him for violation of § 25850(a). The statute specifically authorizes the deputies to "make an arrest without a warrant" where they have "reasonable cause to believe that [Plaintiff] has violated [§ 25850(a)], ***whether or not [that section] has, in fact, been violated***." *See* CAL. PEN. CODE § 25850(g)(2).

### b.     The Search Was Reasonable

To the extent Plaintiff challenges the seizure of his firearms, that claim fails because the deputies were "***authorized to examine***" Plaintiff's firearms to determine if they were loaded in violation of § 25850(a).  *See* CAL. PEN. CODE § 25850(b).

Plaintiff's challenge to the extent and duration of the search of his car similarly fails.  Although the Fourth Amendment generally requires a warrant for a search to be reasonable, the warrant requirement is subject to certain exceptions.  *See Riley v. California*, 573 U.S. 373, 382 (2014).  Here, the search of Plaintiff's vehicle was justified by the "automobile" and "search incident to arrest" exceptions.

More than a century ago, the Supreme Court recognized an exception to the warrant requirement for searches of vehicles.  *See Carroll v. United States*, 267 U.S. 132, 153 (1925).  Under the "automobile" exception, as long as the police have probable cause to search the vehicle, the search is not unreasonable if it is conducted without a warrant.  *See Collins v. Virginia*, 584 U.S. 586, 591–92 (2018); *Maryland v. Dyson*, 527 U.S. 465, 466–67 (1999) (*per curiam*).  Separately, the Supreme Court has also recognized "the right on the part of the Government … to search the person of the accused when legally arrested to discover and seize the fruits or evidences of crime."  *Riley*, 573 U.S. at 382.  Due to "circumstances unique to the vehicle context," the Court has extended such "searches incident to arrest" to searches of an arrestee's vehicle "***when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.***"  *Arizona v. Gant*, 556 U.S. 332, 343 (2009).

Here, as discussed above, the deputies had probable cause to arrest Plaintiff for violation of §§ 25850 and 32310 and, thus, to search his vehicle.  Indeed, given Plaintiff's disclosure that ***he had firearms in his vehicle***, the deputies had probable cause to search the vehicle for those firearms and to determine if they were loaded in violation of § 25850(a).  *See* CAL. PEN. CODE § 25850(b); *see also Wesby*, 583 U.S. at 57 ("Probable cause is ***not*** a high bar.").  Moreover, given Plaintiff's disclosure, it was "reasonable to believe evidence relevant to the crime of arrest [*i.e.*, possession of

8

MANNING | KASS

1  loaded firearms] might be found in the vehicle." *See Gant*, 556 U.S. at 343–44 ("the
2  offense of arrest will supply a basis for searching the passenger compartment of an
3  arrestee's vehicle and any containers therein").  Finally, under the "automobile"
4  exception, the deputies were also authorized to search "for evidence relevant to
5  offenses *other than the offense of arrest*" (*see id.* at 347), such as Plaintiff's
6  possession of illegal (large-capacity) magazines for his firearms.

2.    **No First Amendment Retaliation**

8      The First Amendment "prohibits government officials from subjecting an
9  individual to retaliatory actions" for engaging in protected activity. *Nieves v. Bartlett*,
10  587 U.S. 391, 398 (2019).  To state a claim, "the plaintiff must allege that (1) it
11  engaged in constitutionally protected activity; (2) the defendant's actions would chill
12  a person of ordinary firmness from continuing to engage in the protected activity; and
13  (3) the protected activity was *a substantial motivating factor* in the defendant's
14  conduct—*i.e.*, that *there was a nexus between the defendant's actions and an intent
15  *to chill speech*." *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858,
16  867 (9th Cir. 2016).  Here, Plaintiff's claim falters at the third prong.

17      To begin with, any challenge to the arrest on First Amendment grounds fails
18  because the deputies had probable cause to arrest Plaintiff.  The law is clear that "[t]he
19  plaintiff pressing a retaliatory arrest claim must plead and prove *the absence of*
20  *probable cause for the arrest*." *Nieves*, 587 U.S. at 401–02.  Here, as the Court
21  previously concluded, Plaintiff's claim fails as a matter of law because the SAC on
22  its face reveals that *the deputies had probable cause to arrest Plaintiff* for violation
23  of §§ 25850 and 32310.  *See* Dkt. No. 38 at 4–7.

24      Cognizant of the foregoing, Plaintiff shifts his focus in the SAC and now
25  alleges that Sheriff Bianco took retaliatory actions *after* the arrest based on Plaintiff's
26  protected First Amendment activity.  *See* ¶¶ 74–87.  Plaintiff, however, still fails to
27  plausibly plead that any such action was taken *as a result* of any protected activity.

28      To state a claim for First Amendment retaliation, Plaintiff must allege that

9

constitutionally-protected conduct was *a "substantial" or "motivating" factor* for the alleged adverse action.  *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  Here, even assuming that Sheriff Bianco's statements can qualify as an "adverse action," the SAC lacks *any* factual content to plausibly allege that any protected activity (such as Plaintiff's attendance at the rally, his political journalism, or his support for President Trump) was a substantial or motivating factor for such adverse action.  *See Iqbal*, 556 U.S. at 678.

On the contrary, the SAC confirms that *the only* reason for Sheriff Bianco's statements was to defend the deputies' decision to arrest Plaintiff, to provide the facts regarding the arrest as well as Sheriff Bianco's personal opinions on the arrest, and to answer questions from the public and the press.  Plaintiff's conclusory allegations to the contrary lack any factual support and, thus, are insufficient to push Plaintiff's allegations past the "plausibility" threshold.  *See id.* ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.").

### 3.    Plaintiff's *Monell* Claim Fails

Plaintiff seeks to impose *Monell* liability under the theory of failure to train. To begin with, the claim fails because the FAC does not plausibly allege any underlying constitutional violation.  *See Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020).  The claim also fails on the merits.

The pleading hurdle is higher where plaintiff alleges *Monell* liability under the "failure to train" theory.  *See Connick v. Thompson*, 563 U.S. 51, 61 (2011).  To state a claim, Plaintiff must establish that the training practices amounted to "deliberate indifference," which generally requires showing "[a] pattern of similar constitutional violations by untrained employees."  *See id.* at 61–62.

Here, Plaintiff's conclusory allegations are insufficient to meet this heightened standard.  *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Plaintiff's claim appears to be premised on the County's alleged failure to adequately train employees

1  regarding (1) voluntary firearm disclosures, (2) media communications, (3) detention

2  rights, and (4) political event security conditions. *See* ¶¶ 92–95. The SAC, however,

3  fails to allege ***any*** prior incidents involving voluntary firearm disclosures, media

4  communications, or political event security conditions. Instead, it relies on inapposite

5  prior instances dealing with jail operations and in-custody deaths. *See* ¶ 99. None of

6  those prior instances comes close to matching the allegations asserted in the SAC.

7  *See Hyde v. City of Willcox*, 23 F.4th 863, 875 (9th Cir. 2022) ("an inadequate training

8  policy itself cannot be inferred from a single incident").

9         **4.**      **Failure-to-Intervene Claim Fails**

10        Plaintiff's claim for failure to intervene fails because, as discussed above, the

11  SAC fails to plausibly allege any underlying constitutional violation. *See Shepard v.*

12  *Perez*, 609 F. App'x 942, 942–43 (9th Cir. 2015); *Gilton v. City & Cnty. of San*

13  *Francisco*, 2023 WL 5600082, at *11 (N.D. Cal. Aug. 29, 2023). It also fails because

14  it is asserted only against the County of Riverside, even though the County (as a

15  municipality) ***cannot*** be liable under § 1983 on a *respondeat superior* theory. *See*

16  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).

17     **B.**    **The Court Should Grant Defendants' Anti-SLAPP Motion and**
18            **Strike the State-Law Causes of Action**

19        Plaintiff's five state-law claims are premised on Sheriff Bianco's protected

20  activity and must be stricken because Plaintiff cannot demonstrate a reasonable

21  probability of prevailing on the merits of those claims, particularly because each of

22  these claims is barred under one or more privileges set forth in Civil Code § 47.

23         **1.**      **Plaintiff's Claims Arise Out of Protected Activity**

24        The first step of the anti-SLAPP inquiry "requires the defendant to make a

25  *prima facie* showing that the plaintiff's suit arises from an act in furtherance of the

26  defendant's constitutional right to free speech." *CoreCivic*, 46 F.4th at 1140. To

27  meet their burden, Defendants need only demonstrate that Plaintiff's lawsuit arises

28  from activity that is protected under Civil Code § 425.16(e).

---

11

Defendants' Motion to Dismiss and Anti-SLAPP Motion re: Plaintiff's Second Amended Complaint

1    Here, Plaintiff's state-law claims are premised on Sheriff Bianco's statements

2    at the press conference and during interviews regarding Plaintiff's detention and

3    arrest, as well as a single alleged text message to *The Epoch Times*. *See* ¶¶ 118, 128,

4    134, 145, 152–154. Each of these amounts to "protected activity" under the statute.

5    For example, subsection (e)(3) applies to "any written or oral statement or

6    writing made in a place open to the public or a public forum in connection with an

7    issue of public interest." CAL. CIV. PROC. CODE § 425.16(e)(3). Here, all of Sheriff

8    Bianco's challenged statements (except for a single text message) were oral

9    statements made in a place open to the public or a public forum (press conference and

10   interviews) and were made in connection with an "issue of public interest" (arrest of

11   a suspect with loaded weapons at a Trump rally, after two prior assassination attempts

12   on President Trump, which generated extensive public interest and media coverage).

13   Subsection (e)(4), in turn, applies to "***any other conduct*** in furtherance of the

14   exercise of the constitutional right of petition or the constitutional right of free speech

15   in connection with a public issue or an issue of public interest." CAL. CIV. PROC.

16   CODE § 425.16(e)(4). It is broader than subsection (e)(3) and has been construed to

17   apply even to "private communications, ***so long as they concern a public issue***." *See*

18   *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 897 (2004). Here, all of Sheriff Bianco's

19   interviews, the press conference, and even the text message fall squarely within this

20   catchall provision because they were made "in connection with a public issue" and

21   concerned "an issue of public interest"—the arrest of a person with loaded weapons

22   at President Trump's rally during a presidential campaign closely followed by the

23   entire nation that, at the time, already included two failed assassination attempts.

24   The Legislature intended the anti-SLAPP statute to be construed "broadly."

25   *See* CAL. CIV. PROC. CODE § 425.16(a). Subsections (e)(3) and (e)(4) in particular

26   "are quite broad." *See Wilbanks*, 121 Cal. App. 4th at 893. "In articulating what

27   constitutes a matter of public interest, courts look to certain specific considerations,

28   such as whether the subject of the speech or activity 'was a person or entity in the

MANNING | KASS

public eye' or 'could affect large numbers of people beyond the direct participants'; and whether the activity 'occurred in the context of an ongoing controversy, dispute or discussion' or 'affected a community in a manner similar to that of a governmental entity.'"  *See FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 145–46 (2019); *see also Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) ("an issue of public interest" is "any issue in which the public is interested").

Here, Sheriff Bianco's statements regarding the arrest of a person with loaded weapons at President Trump's rally—whether made at a press conference, during an interview, or in a text message to a newspaper—clearly concerned "***an issue of public interest***" because they concerned President Trump ("a person … in the public eye," *see FilmOn.com*, 7 Cal. 5th at 145–46) and were made during a presidential campaign closely followed by the entire nation that, at the time, already included ***two failed assassination attempts***.  Moreover, a potential assassination attempt on a former President of the United States and the leading candidate for President during a highly-contested election campaign is also clearly an event that "could affect large numbers of people beyond the direct participants," particularly because it "occurred in the context of an ongoing controversy, dispute or discussion" (*i.e.*, a highly-contested election campaign) and because it "affect[s] [the country] in a manner similar to that of a governmental entity." *See id.* at 145–46.

Finally, ***the context*** of Sheriff Bianco's statements makes clear that they were made on a public issue because they were made to the media for dissemination to the public on a topic of great public interest.  *See id.* at 140 ("the context of a defendant's statement is relevant"); *see also San Diegans for Open Gov't v. San Diego State Univ. Rsch. Found.*, 13 Cal. App. 5th 76, 101 (2017).

### 2.    Plaintiff Cannot Establish Reasonable Probability of Prevailing on the Merits of the State-Law Claims

At second step, where the anti-SLAPP motion challenges only legal sufficiency of the claims, the Court applies the Rule 12(b)(6) standard to consider whether a claim

Defendants' Motion to Dismiss and Anti-SLAPP Motion re: Plaintiff's Second Amended Complaint

is properly stated. *CoreCivic*, 46 F.4th at 1140. Here, Plaintiff cannot show a reasonable probability of prevailing on his claims because they are absolutely barred under the "official duty" and "litigation" privileges. *See Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 264 (9th Cir. 2013) (if defendant's statements "lie within California's statutory litigation privilege," then plaintiff "has no probability of success on the merits" and the special motion to strike should be granted); *Digerati Holdings, LLC v. Young Money Ent., LLC*, 194 Cal. App. 4th 873, 888 (2011) ("A plaintiff cannot establish a probability of prevailing if the litigation privilege precludes the defendant's liability on the claim."). The claims also fail on the merits.

### a.     Absolutely Barred by the "Official Duty" Privilege

The "official duty" privilege under § 47(a) applies to statements made "[i]n the proper discharge of an official duty." *See* Cal. Civ. Code § 47(a). It exists to allow public officials "the freedom to make tough policy decisions ***and tell the public about the reasons behind those decisions***," without fear of retaliation. *See Maranatha Corr., LLC v. Dep't of Corr. & Rehab.*, 158 Cal. App. 4th 1075, 1079 (2008). This is an "absolute" privilege that is "***not*** negated by malice or other personal motivation of the publisher." *See Kilgore v. Younger*, 30 Cal. 3d 770, 778 (1982).

"Cases applying the doctrine are legion." *See Maranatha*, 158 Cal. App. 4th at 1087–88 (collecting cases). For example, in *Barr v. Matteo*, a scandal developed in the office of a federal agency concerning employees who had been permitted to take their accumulated terminal-leave payments and then be rehired. 360 U.S. 564, 565–66 (1959). The affair received widespread publicity, prompting the acting director of the agency to suspend two of his subordinates and issue a press release implying that they were responsible for the misdeeds. *Id.* at 567. In a libel suit by the two officials, the U.S. Supreme Court held that the director's statements were absolutely privileged. *Id.* at 574. In so holding, the Court observed that the director headed "an important agency of government" and "a publicly expressed statement of the position of the agency head ... was an appropriate exercise of the discretion which an officer of that

---

14

1   rank must possess if the public service is to function effectively." *Id.* at 574–75.

2        California Supreme Court followed suit in *Saroyan v. Burkett*, finding that the

3   privilege applied to bar a defamation suit based on statements by the Superintendent

4   of Banks to the press relating to plaintiff's conduct as attorney for the state banking

5   department. 57 Cal. 2d 706, 707–08 (1962). The Court observed that the defendant

6   was "the head of the State Banking Department" and that he "was acting in the

7   exercise of an executive function when he defended the policy of his department,"

8   entitling him to an absolute privilege. *Id.* at 710–11. And in *Kilgore*, the California

9   Supreme Court upheld the application of the privilege to statements in a report

10  distributed by the Attorney General at a press conference, which claimed that plaintiff

11  was involved in illegal bookmaking. 30 Cal. 3d at 774–75, 781–82.

12       In *Maranatha*, Court of Appeal found the privilege to apply to a letter published

13  by the director of the Department of Corrections that accused a private prison

14  contractor of misappropriating public funds. 158 Cal. App. 4th at 1079. The Court

15  observed that "[l]ike the government officials in *Barr*, *Saroyan* and *Kilgore*, [the

16  director] released the termination letter to the press in defense of a policy decision she

17  made." *Id.* at 1088. Similarly, in *Morrow v. L.A. Unified School District*, Court of

18  Appeal applied the privilege to statements in an interview by the Superintendent of

19  Schools that criticized the plaintiff's handling of a series of violent campus

20  disturbances. 149 Cal. App. 4th 1424, 1429 (2007). The court observed that the

21  superintendent "was publicly explaining the district's response to a matter of

22  widespread concern, which was one of his official duties." *Id.* at 1442–43.

23       In California, sheriffs are ***constitutionally-mandated officials*** who are

24  supervised directly by the state Attorney General. *See* Cal. Const. art. V, § 13; *id.*

25  art. XI, § 1(b). As the sheriff, Sheriff Bianco exercises significant responsibilities.

26  *See* Cal. Gov't Code §§ 26600–26604. Chief among the sheriff's duties is the

27  obligation to "preserve peace," including through participation in "any project of

28  crime prevention." *See* Cal. Gov't Code § 26600.

---

Defendants' Motion to Dismiss and Anti-SLAPP Motion re: Plaintiff's Second Amended Complaint

1    Here, Sheriff Bianco was properly discharging his official duties as the sheriff

2    when he made the challenged statements.  As the sheriff, he has an obligation to keep

3    the public informed about the operation of the Sheriff's Department, which includes

4    conducting press conferences and submitting to interviews about high-profile arrests.

5    Indeed, the SAC concedes that Plaintiff's arrest received wide media coverage and

6    was of great public interest.  *See* ¶¶ 46–47; *see also* Ex. A at 0:50–1:20 (noting that

7    there was *a lot of media attention* regarding Plaintiff's arrest and that Sheriff Bianco

8    was there to give information regarding the arrest and to answer questions).

9    Nor can there be any dispute that the subject of the press conference, interviews,

10    and text message to *The Epoch Times* involved ***public and official business***.  Indeed,

11    just like the government officials in *Barr*, *Saroyan*, *Kilgore*, *Maranatha*, and *Morrow*,

12    Sheriff Bianco held the press conference, sat for interviews, and sent the challenged

13    text message to *The Epoch Times* to defend and explain the deputies' decision to

14    detain and arrest Plaintiff.  "Because a public official's duty includes the duty to keep

15    the public informed of his or her management of the public business, ***press releases,***

16    ***press conferences and other public statements by such officials are covered by the***

17    ***'official duty' privilege***, although similar statements by private litigants are not

18    covered by the litigation privilege."  *See Maranatha*, 158 Cal. App. 4th at 1089.

19    At the end of the day, the public's confidence in law enforcement depends on

20    the law enforcement being open and transparent about arrests, including the high-

21    profile arrest of Plaintiff in this case.  To paraphrase the California Court of Appeal's

22    observation in another case:  "Public officials in [Sheriff Bianco's] capacity should

23    be encouraged to engage in frank and open communication on important public issues

24    in order to function effectively in the offices entrusted to them.  The public benefit of

25    such communications outweighs the potential harm to any individual's reputation."

26    *See Copp v. Paxton*, 45 Cal. App. 4th 829, 843 (1996).

27    In sum, the "official duty" privilege completely bars all of Plaintiff's state-law

28    claims against Sheriff Bianco and, by extension, against the County as his employer.

Defendants' Motion to Dismiss and Anti-SLAPP Motion re: Plaintiff's Second Amended Complaint

### b. Absolutely Barred by the Litigation Privilege

Sheriff Bianco's statements are also immune under the "litigation" privilege, which applies to communications made as part of the "judicial proceeding" and "in any other official proceeding authorized by law." *See* CAL. CIV. CODE § 47(b)(1), (3). The privilege is applicable "to *any communication*, whether or not it amounts to a publication, and all torts except malicious prosecution." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990). "This privilege is absolute in nature, applying to *all* publications, *irrespective of their maliciousness*." *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007).

The "litigation" privilege is given a "broad interpretation" (*id.*) and, as relevant here, extends to statements made *preliminary to litigation*. *See Rubin v. Green*, 4 Cal. 4th 1187, 1194–95 (1993). To that end, a prelitigation communication is absolutely privileged so long as it has "*some relation* to a proceeding *actually contemplated in good faith and under serious consideration*." *See id.*

Here, Sheriff Bianco's statements were made in his official capacity as the sheriff and *in relation to the arrest and citation of Plaintiff* for violation of, among other things, Penal Code § 25850(a). ¶ 39. At the time that the alleged statements were made, and given Plaintiff's arrest, a criminal prosecution was contemplated in good faith and under serious consideration, triggering the litigation privilege. Indeed, since the incident, *charges have been filed against Plaintiff* for the firearm violation and are currently pending. *See* Exs. G, H, I.[2]

The litigation privilege also applies because Sheriff Bianco's statements were made in the course of police investigation, which qualifies as "any other official proceeding authorized by law." *See* CAL. CIV. CODE § 47(b)(3). As the California

---

[2] Under Federal Rule of Evidence 201(b)(2), the Court can take judicial notice of the misdemeanor complaint against Plaintiff and the criminal docket. *See United States v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.1992); *Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004).

1  Court of Appeal observed: "The term 'official proceeding' extends to *investigatory*
2  *activities* by public agencies." *Garamendi v. Golden Eagle Ins. Co.*, 128 Cal. App.
3  4th 452, 478 (2005). "The privilege is not restricted to statements made once a
4  proceeding has been commenced, but may apply to statements made in advance." *Id.*
5  Thus, "[t]he 'official proceeding' privilege has been *interpreted broadly* to protect
6  communication to *or from* governmental officials which may precede the initiation
7  of formal proceedings." *Id.*; *see also Hagberg v. Cal. Fed. Bank*, 32 Cal. 4th 350,
8  365, 370 (2004) ("communications are privileged under section 47(b) when they are
9  intended to instigate official governmental investigation into wrongdoing, *including*
10  *police investigation*") (resolving split in authority).

11      In addition, California courts have interpreted a similar phrase ("public official
12  proceeding") in § 47(d) to include police investigations. *See Balzaga v. Fox News
13  Network, LLC*, 173 Cal. App. 4th 1325, 1337 (2009) ("A 'public official proceeding'
14  *includes a police investigation*."); *see also Kilgore*, 30 Cal. 3d at 774, 776 (applying
15  the privilege to a news conference convened by the Attorney General to discuss a
16  report relating to persons suspected of involvement in organized criminal activity);
17  *Green v. Cortez*, 151 Cal. App. 3d 1068, 1073 (1988) (applying the privilege to
18  statements relating to a police investigation into alleged use of excessive force by the
19  police); *Hayward v. Watsonville Reg.-Pajaronian & Sun*, 265 Cal. App. 2d 255, 259–
20  61 (1968) (applying the privilege to information obtained from a police crime report
21  and FBI "rap sheet" upon which a criminal complaint was filed).

22      In sum, Sheriff Bianco's statements made during the press conference and
23  interviews or to any newspaper (including *The Epoch Times*) relating to the detention
24  and arrest of Plaintiff are absolutely privileged under § 47(b) because they have "*some*
25  *connection or logical relation*" to the police investigation into Plaintiff's criminal
26  violations and the subsequent criminal action instituted against Plaintiff. *See Silberg*,
27  50 Cal. 3d at 212 (the communication must "have some connection or logical relation
28  to the action"); *Rubin*, 4 Cal. 4th at 1193 (the communication must have "*some*

18

MANNING | KASS

*relation*" to the proceeding and extends to prelitigation conduct that is "actually contemplated in good faith and under serious consideration"); *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006) (privilege extends to steps taken prior to the proceeding).

### c. Plaintiff's Defamation Claims Fail Because of the "Privileged" Nature of the Challenged Statements

Defamation can be effected by either "slander" or "libel." CAL. CIV. CODE § 44. Slander is "a false and *unprivileged* publication, orally uttered" that, among other things, "[c]harges any person with crime" or which "by natural consequence, causes actual damage." *Id.* § 46(1), (5). Libel is "a false and *unprivileged* publication by writing" that "exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." *Id.* § 45. Here, Plaintiff's slander and libel claims fail as a matter of law because, as discussed above, the challenged oral and written statements *were privileged* under § 47(a) and/or (b). *See* CAL. CIV. CODE § 46 (to qualify as slander, the statement must be "unprivileged"); *id.* § 45 (same for libel).

### d. Slander Claim Fails

The slander claim also fails because no reasonable factfinder could conclude that the contested statements in ¶ 118 implied an assertion of an objective fact. As the Ninth Circuit explained, "the threshold question in every defamation suit is whether a reasonable factfinder could conclude that the [contested] statement implies an assertion of objective fact." *Herring*, 8 F.4th at 1157. The Ninth Circuit applies "a three-factor test in resolving this question: (1) whether *the general tenor of the entire work* negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used *figurative* or *hyperbolic* language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." *Id.* "Whether published material is reasonably susceptible of an interpretation which implies a provably false assertion of fact—the dispositive question in a defamation action—is a question of law for the court." *Couch v. San*

Defendants' Motion to Dismiss and Anti-SLAPP Motion re: Plaintiff's Second Amended Complaint

1  *Juan Unified Sch. Dist.*, 33 Cal. App. 4th 1491, 1500 (1995).

2      More importantly, "defamatory meaning must be found, if at all, in a reading

3  of ***the publication as a whole***. Defamation actions cannot be based on snippets taken

4  out of context." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 443 (9th Cir. 2010).

5  "The context of a statement may control whether words were understood in a

6  defamatory sense." *Herring*, 8 F.4th at 1157. "The broad context includes the general

7  tenor of the entire work, the subject of the statements, the setting, and the format of

8  the work." *Id.* Thus, Sheriff Bianco's challenged statements regarding Plaintiff's

9  detention and arrest "must be analyzed ***in the context of the entire interview [and the***

10 ***entire press conference]***, not just the portion[s]" that Plaintiff has chosen to highlight

11 or Plaintiff's interpretation of those statements. *See Crowe*, 608 F.3d at 443.

12     Here, tested under the foregoing standards, a review of the press conference

13 and interview videos clearly demonstrates that Sheriff Bianco was only expressing

14 ***his opinion*** that, in his mind, the deputies prevented a third assassination attempt on

15 President Trump when they detained Plaintiff with loaded guns on his way to the rally.

16 Indeed, Sheriff Bianco repeatedly states that this is ***his personal opinion*** and,

17 detrimentally to Plaintiff's claims, discloses all of the facts known at the time,

18 ***including Plaintiff's denials*** that he did not intend to harm the President.

19     For example, the video of the press conference reveals that Sheriff Bianco

20 commenced the conference by noting that there was a lot of media attention regarding

21 Plaintiff's arrest and that he was there to give information regarding the arrest and to

22 answer questions. Ex. A at 0:50–1:20. Sheriff Bianco notes that the deputies

23 recovered a loaded handgun and a shotgun from Plaintiff's vehicle. *Id.* at 5:10–5:20.

24 He repeatedly comments that the investigation into Plaintiff ***is ongoing***. *Id.* at 1:15–

25 1:35, 5:30–6:00. He then notes that Plaintiff was taken into custody, booked into jail

26 on gun charges, then released, and will need to further his court case in the future. *Id.*

27 at 5:20–5:45. He observes that ***from the state law enforcement perspective***, the

28 firearm charges were what Plaintiff was arrested and booked for. *Id.* at 5:55–6:10.

MK MANNING | KASS

He specifically clarifies that the deputies did *not* arrest Plaintiff for going inside the rally but for having illegal guns in his car. *Id.* at 9:15–9:30.

Sheriff Bianco specifically acknowledges that there is absolutely no way for anyone to know what was in Plaintiff's head and that people can only "speculate" what Plaintiff's frame of mind was. *Id.* at 8:40–8:55, 9:25–9:35; *see also id.* at 10:15–10:25 (only speculation as to what Plaintiff's intentions were). It was at this juncture, in response to a question, that Sheriff Bianco stated: "I *probably* did have deputies that prevented a third assassination attempt." *Id.* at 10:35–10:45. Sheriff Bianco continues by again emphasizing that *investigation was still ongoing*. *Id.* at 13:40–14:00. *He clearly discloses all of the facts that his opinion is based on*. *See id.* at 20:50–21:45 (two guns; multiple boxes of ammunition; cited for the unregistered loaded firearm; booked and released with a promise to appear at next court date).

He then notes that any charge for potential assassination would be a federal crime and handled by federal authorities, and specifically notes that he is "*not* saying that they are going to be able to" prove it. *Id.* at 23:25–23:45. He then again explains that it was "*the weapons charges* that we arrested him for." *Id.* at 23:40–23:45.

The same is true of the statements during Sheriff Bianco's interviews. For example, during the Fox News appearance, Sheriff Bianco right off the bat states that he has read Plaintiff's denials and that "they are believable statements" and that "I hope that was the case for his sake." Ex. B at 0:45–0:55. He then observes that this does not change the fact that Plaintiff brought guns to a Trump rally and that he was stopped before he got inside. *Id.* at 0:50-1:05. It was only in response to a question as to whether he thought he stopped a third assassination attempt, that Sheriff Bianco responded: "*in our minds*, we did." *Id.* at 2:15–2:30. Sheriff Bianco then once again acknowledges that "there is a lot of speculation" that Plaintiff is "just an innocent person" and observes that "he very well could be." *Id.* at 2:30–2:45.

Plaintiff also challenges Sheriff Bianco's statements to the *Riverside Press-Enterprise*, but that article appears to have merely reprinted the statements that Sheriff

21

1  Bianco made at the press conference.  *See* ¶ 118(a).

2          Sheriff's Bianco's News Nation interview (*see* ¶ 44) is consistent with the press
3  conference and Fox News interview.   The host asks him to address "conflicting
4  reports" regarding Plaintiff's intentions and whether he still sees this as a third
5  assassination attempt. Ex. C at 0:05–0:35.  Sheriff Bianco responds that the Sheriff's
6  Department will not be investigating any assassination charges, as that would be the
7  purview of the Secret Service and/or the FBI.  *Id.* at 0:35–0:45.  He again notes that
8  the Sheriff's Department only arrested Plaintiff for gun violations.  *Id.* at 1:15–1:25.
9  He acknowledges that it would be the FBI's responsibility to investigate the incident
10  and to determine whether Plaintiff "was a threat at all" and agreed that it "certainly
11  is" a plausible explanation that Plaintiff was innocent and, if that's what the FBI
12  determines, then "more power to him." *Id.* at 1:20–1:45.  Sheriff Bianco also once
13  again emphasizes that the deputies' responsibility was to make sure that Plaintiff did
14  not get into the rally with weapons, and they did, and Plaintiff was arrested for that;
15  what his intentions were is "irrelevant."  *Id.* at 1:45–2:00.

16          The same is true with regard to Sheriff Bianco's statements on April 12, 2025.
17  *See* ¶ 50.  There, as part of responding to questions during his campaign event, Sheriff
18  Bianco was again asked about Plaintiff's arrest. Ex. D at 58:55–59:45.  He once again
19  clarified that the Sheriff's Department arrested Plaintiff for weapons violations.  *Id.*
20  at 1:00:25–1:00:30.  He again explained that any investigation into any attempted
21  assassination was the purview of the FBI and Secret Service.  *Id.* at 1:00:30–1:00:50.
22  He noted, once again, that he "did not know what [Plaintiff] was there for" and
23  acknowledged Plaintiff's statements that he is a big Trump supporter.  *Id.* at 1:00:45–
24  1:01:05.  More importantly, Sheriff Bianco once again ***disclosed all of the facts*** under
25  which he and his deputies were operating and noted that, at the time of the press
26  conference, he did believe that they may have prevented a third assassination attempt,
27  given all of the available facts.  *Id.* at 1:01:05–1:02:10.  He also once again noted that
28  if this turned out not to be the case, great for Plaintiff.  *Id.* at 1:02:10–1:02:25.  He

22

1  emphasized once again that for him, this was irrelevant, because all that the Sheriff's

2  Department arrested Plaintiff for were the gun violations. *Id.* at 1:02:20–1:02:30.

3         The same is true of Sheriff Bianco's appearance on The Britt Mayer Show. *See*

4  ¶ 51. There, the podcaster asked Sheriff Bianco about the incident and Sheriff Bianco

5  provided the same response he did at the April 12, 2025 event. Ex. E at 16:10–18:30.

6  He discussed the media attention that the incident received, which prompted him to

7  hold the press conference on October 13, 2024, to address Plaintiff's arrest and answer

8  questions. *Id.* at 16:45–18:30. As before, Sheriff Bianco reiterated that the question

9  that he was asked at the press conference was whether he thought that they had

10 prevented a third assassination attempt, and he answered that based on the information

11 available to them at the time (once again, ***providing all of the details underlying his***

12 ***opinion***), he thought that they did. *Id.* at 18:30–19:25. He also once again explained

13 that he did say at the press conference that he hoped that Plaintiff was innocent, but

14 that this was irrelevant to the gun violations. *Id.* at 19:20–19:50.

15        All told, the full videos make clear that "a reasonable fact-finder could ***not***

16 conclude that [Sheriff Bianco] implied that [Plaintiff was ***in fact*** a 'would-be Trump

17 assassin']." *See Crowe*, 608 F.3d at 443. In this regard, *Crowe* is on point. That case

18 involved an allegedly egregious conduct by the detectives in pinning the stabbing of

19 a young girl on her brother and several other teenagers. *Id.* at 417–425. A year later,

20 DNA testing revealed the girl's blood on the shirt of a transient who had been seen in

21 the neighborhood on the night of the murder. *Id.* at 425–26. The shirt had been

22 collected as part of the initial investigation, but never fully tested. *Id.* Charges against

23 the boys were eventually dropped, and the transient was convicted of the murder. *Id.*

24        The boys and their families sued. Among other things, they asserted

25 defamation claims against the Deputy District Attorney "based on statements she

26 made during an appearance on the news program '48 hours' shortly after the

27 indictments against the boys were dismissed." *Id.* at 442. The Ninth Circuit affirmed

28 the district court's conclusion that a reasonable fact-finder could ***not*** conclude that the

Defendants' Motion to Dismiss and Anti-SLAPP Motion re: Plaintiff's Second Amended Complaint

1   Deputy District Attorney implied that the boys actually killed the girl:

2
3   > ***Viewed in the context of the interview as a whole***, even Stephan's most
    > questionable statements can only be interpreted as ***describing the***
4   > ***evidence*** that led the police to investigate the boys and allowed the
    > prosecution to continue as far as it did and ***expressing the facts that the***
5   > ***investigation had not concluded*** and that it was still possible that either
    > the boys or Tuite would ultimately be tried for Stephanie's murder.
6

7   *Id.* at 443–44.

8       The same is true here.  Viewed in the context of the press conference and
9   interviews as a whole, Sheriff Bianco's statements regarding Plaintiff's detention and
10  arrest "can only be interpreted as describing the evidence that led [the deputies to
11  arrest Plaintiff for firearm violations] and expressing the facts that the investigation
12  [was still ongoing]."  *See id.*  Simply put, "[t]he general context of [Sheriff Bianco's]
13  statement[s] … ***negates the impression*** that [he] implied a false assertion of fact."
14  *See Herring*, 8 F.4th at 1158.  The videos confirm that, just like the defendant in
15  *Herring*, Sheriff Bianco "***fairly described the general events involved***" in Plaintiff's
16  arrest and "***offered [his] personal perspective***" on it.  *See id.* at 1158–59.  "A
17  reasonable [listener] would be able to differentiate between [Sheriff Bianco's]
18  commentary and the actual [details of the arrest he was discussing]."  *See id.*

19              e.    **Plaintiff's Defamation-by-Implication Claim Fails**

20      The SAC adds a new cause of action for defamation by implication.  To state a
21  claim, Plaintiff must demonstrate that "(1) his … interpretation of the statement is
22  reasonable; (2) the implication or implications to be drawn convey defamatory facts,
23  not opinions; (3) the challenged implications are *not* substantially true; and (4) the
24  identified reasonable implications could also be reasonably deemed defamatory."  *See*
25  *Issa v. Applegate*, 31 Cal. App. 5th 689, 707 (2019).  Here, for largely the same
26  reasons as discussed above with regard to Plaintiff's slander claim, the defamation-
27  by-implication claim fails at prong two because the SAC fails to plausibly allege that
28  Sheriff Bianco's implications conveyed defamatory ***facts*** as opposed to opinions.

MANNING | KASS

i.    **Implication of Criminal Intent**

"In reviewing a defamation claim, a court must ask as a threshold matter whether a reasonable factfinder could conclude that the contested statement implies an assertion of objective fact." *Id.* at 707.  The Court applies the "totality of the circumstances" test "to determine whether a statement is fact or opinion, and whether a statement declares or implies a provably false factual assertion"; that is, the Court "look[s] to the words of the statement itself *and the context in which the statement was made*." *Id.* at 703.  "A defamatory meaning must be found, if at all, in a reading of the publication *as a whole*." *Id.* at 713.  "Defamation actions cannot be based on snippets taken out of context." *Id.* at 714; *accord Crowe*, 608 F.3d at 443.

Here, tested under the foregoing standards, a review of the press conference and interview videos clearly demonstrates that Sheriff Bianco was only expressing *his opinion* that, in his mind, the deputies prevented a third assassination attempt on President Trump when they detained Plaintiff with loaded guns on his way to the rally. *See supra* Part V.B.2.d.  Indeed, Sheriff Bianco repeatedly states that this is *his personal opinion* and, most importantly, discloses all of the facts known at the time, *including Plaintiff's denials* that he did not intend to harm the President.

Thus, for the same reasons as addressed above with regard to the slander claim, the SAC fails to plausibly allege that "a reasonable factfinder could conclude that the contested statement[s] impl[y] an assertion of objective fact" as opposed to Sheriff Bianco's personal opinion. *See Issa*, 31 Cal. App. 5th at 707.

Indeed, contrary to Plaintiff's allegations, Sheriff Bianco did *not* deliberately omit any material information.  Rather, he consistently disclosed that (1) Plaintiff has denied the allegations, (2) federal investigation was ongoing and has not resulted in any charges, and (3) he hoped Plaintiff was innocent.  *See, e.g.*, Ex. A at 1:15–1:35, 5:30–6:00, 8:40–8:55, 9:25–9:35, 10:15–10:25, 13:40–14:00, 23:25–23:45 (press conference); Ex. B at 0:45–0:55, 2:30–2:45 (Fox News interview); Ex. C at 0:35–0:45, 1:20–1:45 (News Nation interview); Ex. D at 1:00:30–1:01:05, 1:02:10–1:02:25

1   (April 12, 2025 speech); Ex. E at 19:20–19:50 (Britt Mayer podcast).

2                                **ii.    Implication of Deception**

3   Plaintiff's remaining claims of defamation by implication also fail.  For

4   example, Plaintiff alleges that Sheriff Bianco's comments about Plaintiff possessing

5   "multiple fake IDs" conveyed "implication of deception." ¶ 153(c).  But the videos

6   from the press conference and interviews demonstrate that Sheriff Bianco provided

7   all of the details regarding his belief that Plaintiff possessed identifications with

8   different names.  And he consistently couched his statements as his ***own opinions***,

9   rather than facts.  Thus, during the Fox News interview, he indicated that it was his

10  "***personal belief***" that he didn't know what Plaintiff's real name was given the

11  multiple IDs found with different names.  *See* Ex. B at 5:30–6:10.  Likewise, during

12  the News Nation interview, he discussed the fact that Plaintiff had multiple IDs and

13  multiple passports with different names in his vehicle.  *See* Ex. C at 4:05–4:20.

14  These and similar statements in other interviews are also not actionable because

15  they are ***substantially true***.  *See Issa*, 31 Cal. App. 5th at 707–08.  "The law does not

16  require the defendant to justify the literal truth of every word of the allegedly

17  defamatory content.  It is sufficient if the defendant proves true the ***substance*** of the

18  charge, irrespective of slight inaccuracy in the details, so long as the imputation is

19  substantially true so as to justify the 'gist or sting' of the remark." *Id.* at 708.  Here,

20  Plaintiff's SAC concedes that Plaintiff was in possession of passports and IDs ***with***

21  ***different legal names and "name variations"***.  *See* ¶¶ 45(c), 54.  Thus, Sheriff

22  Bianco's statements that Plaintiff had multiple passports and IDs with different names

23  and that Sheriff Bianco, personally, did not know what Plaintiff's real name was were

24  substantially true and, thus, are not actionable as slander.

25                                **iii.   Implication of Extremist Affiliation**

26  Contrary to the SAC's allegations, the videos make clear that Sheriff Bianco

27  ***never*** stated as a matter of fact that Plaintiff had extremist affiliations.  Instead, he

28  accurately reported that Plaintiff's vehicle was unregistered (a fact that Plaintiff does

26

Defendants' Motion to Dismiss and Anti-SLAPP Motion re: Plaintiff's Second Amended Complaint

1    *not* dispute) and had a license plate that was "*indicative*" of belonging to a sovereign

2    citizens group. *See* Ex. A at 4:45–5:10, 26:05–26:25; Ex. B at 4:25–5:00; Ex. C at

3    4:20–4:25. In fact, Sheriff Bianco noted that he *never* said that Plaintiff *was part of*

4    *the sovereign citizens group*; he merely stated that Plaintiff was driving an

5    unregistered car with a license plate that was "indicative" of that group. Ex. B at

6    5:00–5:30. Moreover, contrary to SAC's allegations, Sheriff Bianco *did* acknowledge

7    Plaintiff's denials and disclose that Plaintiff claims to be a Trump supporter. *See,*

8    *e.g.*, Ex. B at 0:45–0:55 (noting that he has read Plaintiff's denials and that "they are

9    believable statements" and that "I hope that was the case for his sake"); Ex. D at

10   1:00:45–1:01:05 (acknowledging Plaintiff's statements that he is a Trump supporter).

### f.    IIED Claim Fails

12   For the reasons discussed above, Plaintiff's IIED claim fails because it is barred

13   by the official duty and litigation privileges. *See Kenne v. Stennis*, 230 Cal. App. 4th

14   953, 971–72 (2014) (applying litigation privilege to bar IIED claim). The IIED claim

15   also fails because it is superfluous to the defamation claims. *See Couch*, 33 Cal. App.

16   4th at 1504 ("When claims for invasion of privacy and emotional distress are based

17   on the same factual allegations as those of a simultaneous libel claim, they are

18   superfluous and must be dismissed."); *Rudwall v. Blackrock, Inc.*, 2006 WL 3462792,

19   at **5–6 (N.D. Cal. Nov. 30, 2006) (dismissing an IIED claim as superfluous), *aff'd*

20   289 F. App'x 240, 242 (9th Cir. 2008).

### g.    No Violation of the Bane Act

22   The Bane Act provides for liability for interference with an individual's

23   constitutional rights "by threat, intimidation, or coercion." CAL. CIV. CODE § 52.1(b).

24   Here, the Bane Act claim fails because, as discussed above, there is no evidence of

25   any underlying constitutional violation. *See Williamson v. City of Nat'l City*, 23 F.4th

26   1146, 1155 (9th Cir. 2022). Moreover, even if Plaintiff could demonstrate an

27   underlying constitutional violation, the Bane Act still "requires a showing of

28   threatening conduct *independent from* the alleged interference or violation of a civil

---

27

right." *Doe v. State of California*, 8 Cal. App. 5th 832, 842–43 (2017).   Notably, "[c]oercion inherent in the alleged constitutional violation" is "***insufficient*** to meet the statutory requirement of 'threat, intimidation, or coercion.'"   *Id.* at 842.

Here, to the extent Plaintiff alleges that the deputies' actions in arresting him violated the Bane Act, the SAC fails to plausibly plead any coercion ***independent from*** the alleged constitutional violation (Plaintiff's right to be free from arrest).

In any event, to recover under the Bane Act, Plaintiff must demonstrate "a ***specific intent*** to violate the arrestee's right to freedom from unreasonable seizure." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).   Here, there are absolutely no allegations in the SAC of ***any*** specific intent by the deputies to deprive Plaintiff of any of his constitutional rights.   Indeed, the SAC acknowledges that the deputies' actions were driven by safety concerns following Plaintiff's disclosure that he was in possession of multiple firearms. *See, e.g.*, ¶¶ 26–30, 61(a).

Finally, to the extent Plaintiff is alleging that Sheriff Bianco's subsequent statements violated the Bane Act, the SAC fails once again to plausibly plead any independent threat or coercion.   Indeed, the SAC concedes that Plaintiff's research has "revealed no direct precedent regarding defamatory statements satisfying the coercion element." *See* ¶ 145.   Thus, Plaintiff's Bane Act claim fails.

## VI.    CONCLUSION

For all these reasons, the Court should grant Defendants' motion to dismiss in full and dismiss Plaintiff's federal claims.   The Court should also grant the anti-SLAPP motion to strike and strike Plaintiff's state-law claims.   Plaintiff has now had three opportunities to state a plausible claim.   Because any further amendment would be futile, the dismissal should be with prejudice and without leave to amend.

Defendants' Motion to Dismiss and Anti-SLAPP Motion re: Plaintiff's Second Amended Complaint

1  DATED:  October 10, 2025          Respectfully submitted,

2                                    **MANNING & KASS**
                                     **ELLROD, RAMIREZ, TRESTER LLP**
3

4                                    By:        */s/ Eugene P. Ramirez*
                                                _____
5                                         Eugene P. Ramirez
                                          Anthony J. Ellrod
6                                         Kayleigh Andersen
                                          Natalya D. Vasyuk
7

8                                         *Attorneys for Defendants Chad Bianco and*
                                          *County of Riverside*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Motion to Dismiss and Anti-SLAPP Motion re: Plaintiff's Second Amended Complaint

1          **CERTIFICATION PURSUANT TO LOCAL RULE 11-6.2**

2      The undersigned, counsel of record for Defendants Chad Bianco and County

3  of Riverside, certifies that this brief contains 9,914 words, which complies with the

4  Court's order dated October 2, 2025. *See* Dkt. No. 43.

5  DATED:  October 10, 2025        **MANNING & KASS**

6                                   **ELLROD, RAMIREZ, TRESTER LLP**

7                          By:      */s/ Eugene P. Ramirez*

8                               Eugene P. Ramirez

9                               Anthony J. Ellrod

                             Kayleigh Andersen

10                               Natalya D. Vasyuk

11

12                               *Attorneys for Defendants Chad Bianco and*
                             *County of Riverside*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Motion to Dismiss and Anti-SLAPP Motion re: Plaintiff's Second Amended Complaint

**MANNING | KASS**

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 801 S. Figueroa St, 15th Floor, Los Angeles, CA 90017-3012.

On October 10, 2025, I served true copies of the following document(s) **Defendants' Notice of Motion and Motion to Dismiss and Special Motion to Strike Plaintiff's Second Amended Complaint; Memorandum of Points and Authorities in Support Thereof** described as  on the interested parties in this action as follows:

Ethan Bearman, Esq.
THE BEARMAN FIRM, INC.
9460 Wilshire Blvd., Suite. 830
Beverly Hills, CA 90212
Phone: (747)232-7626
Direct Phone Line: (747)202-1433
Email: ethan@thebearmanfirm.com
miranda@thebearmanfirm.com
nigelle@thebearmanfirm.com

Attorney for Plaintiff. VEM MILLER

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address carmen.hawkins@manningkass.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 10, 2025, at Los Angeles, California.

*Carmen Hawkins*
_____
Carmen Hawkins