JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-629-KK-DTBx** | Date: | January 5, 2026 |
|---|---|---|---|
| Title: | *Vem Miller v. Chad Bianco et al.* | | |

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **(In Chambers) Order GRANTING Defendants' Motion to Dismiss and Strike Plaintiff's SAC [Dkt. 44]**

## I.
## INTRODUCTION

On September 15, 2025, plaintiff Vem Miller ("Plaintiff") filed the operative Second Amended Complaint ("SAC") against defendants Chad Bianco ("Bianco"), County of Riverside, and Doe Defendants 1 through 100, alleging violations of 42 U.S.C. § 1983 ("Section 1983") and defamation and tort claims under California law arising from the arrest of Plaintiff and defendant Bianco's public statements regarding Plaintiff's arrest. ECF Docket No. ("Dkt.") 41, SAC. On October 10, 2025, defendants Bianco and County of Riverside ("Defendants") filed a Motion to Dismiss and Strike the SAC ("Motion"). Dkt. 44, Motion ("Mot.").

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Defendants' Motion is **GRANTED**.

## II.
## BACKGROUND

### A.    PROCEDURAL HISTORY

On March 10, 2025, Plaintiff initiated the instant action by filing a Complaint against defendants Bianco, County of Riverside, Riverside County Sheriff's Department ("RCSD"), and

David Coronado, alleging violations of Section 1983 and defamation and tort claims under California law.  Dkt. 1.

On May 7, 2025, Plaintiff filed the First Amended Complaint ("FAC"), removing RCSD and David Coronado as defendants.  Dkt. 28, FAC.  On August 14, 2025, the Court granted Defendants' motion to dismiss as to Plaintiff's federal claims with leave to amend.  Dkt. 38.  The Court dismissed Plaintiff's claims for First Amendment retaliation, failure to train under Monell, and failure to intervene for failure to state a claim.  Id.  Among other things, the Court found Plaintiff's First Amendment retaliation claim failed because, based upon the facts alleged in the FAC, officers had probable cause to arrest Plaintiff for firearms offenses.  Id. at 5-7.

On September 15, 2025, Plaintiff filed the operative SAC, raising the following causes of action:

1. **Cause of Action One**: Unlawful detention, search, and seizure under the Fourth and Fourteenth Amendments pursuant to Section 1983 against Defendants;
2. **Cause of Action Two**: First Amendment retaliation pursuant to Section 1983 against Defendants;
3. **Cause of Action Three**: Municipal liability for failure to train under Section 1983 against defendant County of Riverside;
4. **Cause of Action Four**: Failure to intervene under Section 1983 against defendant County of Riverside and Doe Defendants 1 through 100;
5. **Cause of Action Five**: Slander per se against Defendants;
6. **Cause of Action Six**: Libel per se against Defendants;
7. **Cause of Action Seven**: Intentional infliction of emotional distress against Defendants;
8. **Cause of Action Eight**: Violation of the California Civil Code section 52.1 ("Bane Act") against Defendants; and
9. **Cause of Action Nine**: Defamation by implication against Defendants.

SAC ¶¶ 57-163.

On October 10, 2025, Defendants filed the instant Motion seeking to dismiss and strike Plaintiff's claims against Defendants.  Mot.  Defendants argue Plaintiff's federal claims fail to state a claim, and the remaining state claims should be stricken under California's anti-SLAPP statute.  See Mot. at 2-3.  In support, Defendants filed a notice of manual lodging of exhibits.  Dkt. 45.

On November 7, 2025, Plaintiff filed an Opposition.  Dkt. 51.

On November 21, 2025, Defendants filed a Reply.  Dkt. 53.

This matter, thus, stands submitted.

B.    **RELEVANT FACTS**

As alleged in the SAC, Plaintiff is an individual residing in Nevada who is "a political supporter of the 45th and 47th President of the United States of America, Donald John Trump" and

"deeply involved in political support for the President and has been since 2016[.]" SAC ¶¶ 1-3. Defendant Bianco is the Sheriff overseeing RCSD. Id. ¶ 13.

On October 12, 2024, Plaintiff traveled to Coachella, California, to attend a "Trump rally." Id. ¶ 25. Plaintiff was in possession of "valid entry passes for the event." Id. Prior to entering the rally venue, "[f]ollowing standard practice from his home state of Nevada," Plaintiff "voluntarily drove up to an [RCSD] Deputy, and then voluntarily disclosed to this RCSD Deputy . . . that he owned and possessed two firearms, secured in his vehicle." Id. ¶ 26. Specifically, Plaintiff disclosed he was in possession of a shotgun and a handgun; "[o]ffered to have law enforcement hold the firearms"; "[p]resented valid identification and entry passes"; and "[m]ade no attempt to enter the actual venue with firearms[.]" Id. ¶ 27.

After the disclosure, the deputy instructed Plaintiff to move his vehicle into a nearby alcove. Id. ¶ 28. An extensive search of Plaintiff's vehicle was subsequently conducted, lasting "approximately one hour and twenty minutes" and involving "[a]pproximately ten (10) to fifteen (15)" law enforcement personnel, including RCSD deputies, FBI agents, and Secret Service agents. Id. ¶ 32. Plaintiff now claims "[a]t no times were the firearms 'loaded.'" Id. ¶ 28. Plaintiff further alleges he "had an audio recording device recording in his vehicle," which captured the conversation between Plaintiff and the RCSD Deputies and provides the link to the audio recording in the SAC. Id. ¶ 30. The link provides the following relevant audio of the conversation:

> RCSD Deputy: Where are the firearms at?
> Plaintiff: So . . . it's . . . it's all in the back sir.
> RCSD Deputy: Ok. How many firearms are in there?
> Plaintiff: So I have a shotgun there and a handgun in there.
> RCSD Deputy: Ok, do you have any felonies or anything else?
> Plaintiff: Nothing.
> RCSD Deputy: Are those firearms registered?
> Plaintiff: Yes, sir.
> RCSD Deputy: Are . . . is it loaded?
> Plaintiff: No, the shotgun is not loaded . . . the handgun is loaded, yeah.
> RCSD Deputy: I'm going to detain you right now for your . . . for my safety ok?
> Plaintiff: Yeah, I understand.

Id., https://drive.google.com/file/d/14RNILF2sbGvc2_SQRlxbqsbJ-Hw8RvhX at 3:56-4:18 ("Audio Excerpt").[1]

---

[1] Defendants request the Court incorporate the audio recording by reference. Mot. at 6-7. Incorporation by reference is a "judicially created doctrine that treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018). A court may incorporate a document by reference if "the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). Here, as an initial matter, Plaintiff does not object to Defendants' request. See Opp. at 25 (objecting to Defendants' request for incorporation by reference only as to the videos of defendant Bianco's public statements). Further, Plaintiff relies on the audio recording in the SAC with respect to his disclosure of the

Plaintiff alleges at no time did Defendants "[p]rovide probable cause for the extensive nature of the search; [] [d]ocument any contraband in the vehicle or on [Plaintiff's] person, or evidence of criminal activity; [] [e]xplain the necessity for the duration or scope of the search; or [] [r]eceive express consent by [Plaintiff] to do so."  SAC ¶ 33.

Plaintiff was then transported to the Thermal Police Station and booked at the John Benoit Detention Center.  Id. ¶ 34.  Plaintiff was subsequently charged with two misdemeanor violations for carrying a loaded firearm under California Penal Code Section 25850(a) ("Section 25850(a)") and for possession of large-capacity magazines under California Penal Code Section 32310(a).  Id. ¶ 39.  "Both misdemeanor charges resulted in his cite and release."  Id. ¶ 40.

On the morning of October 13, 2024, defendant Bianco allegedly contacted The Epoch Times by text and wrote, "We arrested a man trying to get in the perimeter with two firearms who ended up saying **he was going to kill the president**."  Id. ¶ 41 (emphasis in original).  Later that day, defendant Bianco allegedly told the Southern California News Group that RCSD had "stopped another assassination attempt," and Plaintiff had "multiple phony passports and driver's licenses."  Id. ¶ 8.  On the same day, defendant Bianco gave an interview to the Riverside Press-Enterprise, held a press conference stating the deputies had "'prevented the third assassination attempt' on President Trump," and appeared on News Nation.  Id. ¶¶ 42-44.  On October 14, 2024, defendant Bianco appeared on Fox News Channel and "proclaimed that [Plaintiff] was there to assassinate President Trump, and that he and his department prevented [Plaintiff] from becoming the 'third assassin.'"  Id. ¶¶ 8, 45.  Plaintiff alleges during these public appearances, defendant Bianco made multiple "false statements" and "mischaracterizations," leading to "a number of incredibly damaging and facially harmful headlines on credible news outlets[.]"  Id. ¶¶ 42-46.  Further, Plaintiff alleges defendant Bianco continued making false statements in 2025 regarding the incident on multiple occasions, including at the California Republican Party convention on March 16, 2025, at a campaign event on April 12, 2025, and on the podcast "The Britt Mayer Show" on April 11, 2025.  Id. ¶¶ 49-51.

As a result of the incident and subsequent media reports, Plaintiff alleges he suffered personal and professional harm, including reputational damage, threats and ongoing harassment, loss of business opportunities and income, and severe emotional distress.  Id. ¶¶ 52-53.

///

///

---

firearms to the RCSD Deputies and provides a link to the audio recording.  SAC ¶¶ 27, 62.  Accordingly, because the audio is specifically referenced in the SAC and integral to Plaintiff's Fourth Amendment claim, Defendants' request is **GRANTED** as to the audio.  Finally, incorporation of the audio serves to prevent Plaintiff from selectively omitting portions that may weaken his claims.  Khoja, 899 F.3d at 1002.

However, with respect to Defendants' request as to the videos of defendant Bianco's public statements, because the Court does not necessarily rely on the videos, Defendants' request is **DENIED**.

# III.
# LEGAL STANDARD

A complaint may be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") "only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). In considering whether a complaint states a claim, a court must "construe the pleadings in the light most favorable to the nonmoving party," Capp v. Cnty. of San Diego, 940 F.3d 1046, 1052 (9th Cir. 2019) (quoting Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005)) accepting as true all factual allegations in the complaint and drawing all reasonable inferences in the nonmoving party's favor. Moreno v. UtiliQuest, LLC, 29 F.4th 567, 573 (9th Cir. 2022). The court, however, need not accept as true "a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Iqbal, 556 U.S. at 678). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

# IV.
# DISCUSSION

### A. PLAINTIFF'S CAUSE OF ACTION ONE FOR UNLAWFUL SEARCH AND SEIZURE FAILS TO STATE A CLAIM

#### 1. Applicable Law

The Fourth Amendment prohibits "unreasonable" government searches and seizures. Caniglia v. Strom, 593 U.S. 194, 197-98 (2021). It is well-established, however, that law enforcement may conduct a warrantless search if the search is supported by probable cause. California v. Acevedo, 500 U.S. 565, 579 (1991). Probable cause exists where "there is a fair probability that contraband or evidence of a crime will be found in a particular place based on a totality of the circumstances." United States v. Soto-Zuniga, 837 F.3d 992, 1004 (9th Cir. 2016). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007). Further, "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Arizona v. Gant, 556 U.S. 332, 351 (2009) (emphasis added).

///

### 2. Analysis

Here, Plaintiff alleges the RCSD Deputies unreasonably searched and seized him after he disclosed his identity and possession of firearms. SAC ¶ 61.

As an initial matter, it appears Plaintiff has abandoned this claim because his Opposition fails to address the claim in any way. See Ramirez v. City of Buena Park, 560 F.3d 1012, 1026 (9th Cir. 2009) ("A party abandons an issue when it has a full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes the issue from the case.").

Further, on the merits, the Court finds Plaintiff fails to state a cognizable claim because, as alleged, the RCSD Deputies had probable cause to search and seize Plaintiff. As this Court ruled in its August 14, 2025 Order dismissing Plaintiff's FAC, the RCSD Deputies had probable cause to arrest Plaintiff due to the presence of firearms in Plaintiff's vehicle under Section 25850(g)(2). Dkt. 38 at 6 (noting Section 25850(g)(2) provides "a police officer may make an arrest without a warrant whenever the officer has reasonable cause to believe that the person to be arrested has violated this section, whether or not this section has, in fact, been violated," and finding that "the presence of firearms in Plaintiff's vehicle constitutes reasonable cause that Plaintiff has violated Section 25850(a)" (citation modified)). Moreover, while Plaintiff now claims "[a]t no times were the firearms 'loaded,'" SAC ¶ 28, in both the FAC and SAC, he has incorporated the audio recording of his interaction with the RCSD Deputies in which he specifically stated, "the handgun is loaded." Audio Excerpt at 4:11-:13. Plaintiff's claim to the contrary will thus be ignored. See Toneman v. U.S. Bank Nat'l Ass'n et al., No. CV-12-09369-MMM-MRWx, 2013 WL 12141443, at *8 n. 57 (C.D. Cal. Feb. 22, 2013) ("[T]he court may disregard allegations that are contradicted by the exhibits plaintiffs attach to and incorporate in their complaint and by judicially noticeable documents.").

Notably, the relevant question is not whether the firearms were, in fact, loaded, but whether the RCSD Deputies had probable cause to believe they were loaded. Here, based upon Plaintiff's own audio recording, he himself advised the RCSD Deputies the firearm was loaded. See Audio Excerpt at 4:11-:13. Hence, Plaintiff's own words, as documented in his audio recording, provided the RCSD Deputies probable cause for the search and arrest. See, e.g., United States v. Cruz, 333 F. Supp. 3d 1045, 1053 (D. Mont. 2018), aff'd sub nom. United States v. Ortiz Cruz, 792 F. App'x 488 (9th Cir. 2020) (finding the "[police officer] had probable cause to believe that there was a firearm in the back of the vehicle because [plaintiff] told him there was"). Accordingly, the RCSD Deputies' search incident to Plaintiff's arrest was lawful as it was reasonable to believe the vehicle contained evidence of Plaintiff's possession of a loaded firearm in violation of Section 25850(a). See Wilson v. Los Angeles Police Dep't, No. 22-1-CV05617-VBF-SHKx, 2022 WL 16935627, at *17 (C.D. Cal. Sep. 13, 2022), report and recommendation adopted, No. 22-1-CV05617-VBF-SHKx, 2023 WL 137414 (C.D. Cal. Jan. 9, 2023) (finding the search of plaintiff's vehicle after plaintiff's arrest was justified under Gant and dismissing plaintiff's claim for unlawful search and seizure).

Hence, Defendants' Motion to Dismiss Cause of Action One[2] is **GRANTED**.

---

[2] To the extent Plaintiff seeks to allege additional claims beyond unlawful search and seizure in Cause of Action One, as the Court previously warned in dismissing Plaintiff's deficient FAC, the Court "will not attempt to cobble together alleged facts to support an unidentified cause of action." Dkt. 38 at 8 n.5. Accordingly, the Court declines to consider Plaintiff's unidentified claims.

B.  **PLAINTIFF'S CAUSE OF ACTION TWO FOR FIRST AMENDMENT RETALIATION FAILS TO STATE A CLAIM**

   1.  **Applicable Law**

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." Hartman v. Moore, 547 U.S. 250, 256 (2006). "[T]o demonstrate a First Amendment violation, a plaintiff must provide evidence showing that 'by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct.'" Lacey v. Maricopa Cnty., 693 F.3d 896, 916 (9th Cir. 2012) (quoting Mendocino Env't Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999)).

To state a claim for First Amendment retaliation, a plaintiff must allege: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. Ballentine v. Tucker, 28 F.4th 54, 61 (9th Cir. 2022) (citations omitted). A plaintiff also "must allege facts ultimately enabling him to 'prove the elements of retaliatory animus as the cause of injury,' with causation being 'understood to be but-for causation.'" Lacey, 693 F.3d at 917 (citation modified).

   2.  **Analysis**

Here, Plaintiff's First Amendment retaliation claim is premised upon defendant Bianco's alleged public statements regarding Plaintiff following Plaintiff's arrest. SAC ¶ 78. However, the Court finds Plaintiff fails to allege Defendants have a "retaliatory animus" to chill Plaintiff's First Amendment activities.

Plaintiff bases his First Amendment retaliation claim on his constitutionally protected activities of attending a political rally and assembly, participating in media content "supporting conservative candidates," and making a statement regarding possession of firearms. Id. ¶ 77. Plaintiff alleges Defendants took adverse action when defendant Bianco "engaged in calculated retaliatory conduct specifically targeting Plaintiff's political activities" by making the post-arrest public statements alleged in the SAC. Id. ¶ 78. However, Plaintiff argues the retaliatory animus "is not merely that [Plaintiff] attended a Trump rally, but that [defendant Bianco] *exploited his identity as a supporter* to create a sensational, politically potent narrative of a 'traitor' or 'lunatic' in the ranks." Opp. at 22 (emphasis in original). Plaintiff, therefore, concedes "[t]his exploitation of [Plaintiff's] protected status and political identity to maximize the story's shock value *is* the retaliatory motive." Id. (emphasis in original). However, the desire to "maximize the story's shock value" does not constitute "retaliatory animus" under the First Amendment, given the fundamental value of First Amendment jurisprudence "is the protection against the chilling of lawful speech." Green v. Miss U.S. of Am., LLC, 52 F.4th 773, 799 (9th Cir. 2022); see also Lacey, 693 F.3d at 916 (ruling that to demonstrate a First Amendment violation, a plaintiff must show the deterrence of the plaintiff's political speech is a substantial or motivating factor). Accordingly, Plaintiff fails to state a claim for First Amendment retaliation. See Louis v. Cnty. of Sacramento, No. 2:16-CV-1074-MCE-EFB PS, 2017 WL 661954, at *4 (E.D. Cal. Feb. 17, 2017) (finding plaintiff failed to state a First Amendment

retaliation claim where plaintiff failed to allege "defendant deterred or chilled his speech or that such deterrence was a substantial or motivating factor" in defendant's alleged adverse actions).

Hence, Defendants' Motion to Dismiss Cause of Action Two is **GRANTED**.

### C. PLAINTIFF'S CAUSE OF ACTION THREE FOR FAILURE TO TRAIN FAILS TO STATE A CLAIM

#### 1. Applicable Law

A government entity may be liable under Section 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson, 563 U.S. 51, 60 (2011) (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 692 (1978) ("Monell")). However, a municipality may not be sued under Section 1983 "for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694. Rather, a municipality is liable under Section 1983 only "when execution of [the local] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" Id. As an initial matter, a plaintiff must allege an underlying constitutional violation by a municipal employee. See id. Further, a plaintiff may establish municipal liability under Section 1983 by showing a municipality failed to train its employees and such failure to train amounts to "deliberate indifference" to the constitutional rights of the persons with whom the employees come into contact. City of Canton v. Harris, 489 U.S. 378, 388 (1989).

#### 2. Analysis

Here, Plaintiff fails to state a claim for failure to train under Monell because, for the reasons stated above, Plaintiff fails to allege any underlying violation of his constitutional rights. See Zwarg v. City of San Luis Obispo, No. CV 21-3525-DMG-AFMx, 2022 WL 2189538, at *3 (C.D. Cal. Feb. 16, 2022) (noting Plaintiff's Monell claims fail because of the failure to allege an underlying constitutional violation). Accordingly, Defendants' Motion to Dismiss Cause of Action Three is **GRANTED**.

### D. PLAINTIFF'S CAUSE OF ACTION FOUR FOR FAILURE TO INTERVENE FAILS TO STATE A CLAIM

#### 1. Applicable Law

"Pursuant to a long line of civil cases, police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." United States v. Koon, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), rev'd on other grounds, 518 U.S. 81, 116 (1996). "[A]n officer who failed to intercede when his colleagues were depriving a victim of his Fourth Amendment right . . . would, like his colleagues, be responsible for subjecting the victim to a deprivation of his Fourth Amendment rights." Id.

///

### 2. Analysis

Here, Plaintiff fails to allege a claim for failure to intervene against defendant County of Riverside and Doe Defendants 1 through 100 because, for the reasons stated above, Plaintiff fails to allege any underlying violation of his constitutional rights.  See Wallace v. Jones, No. 22-16324, 2024 WL 1926626, at *1 (9th Cir. May 2, 2024) (ruling that where "there could be no cognizable claim of a constitutional violation by [officer defendants] on which a failure to intercede claim could be predicated," "a failure to intercede claim would fail as a matter of law").

Accordingly, Defendants' Motion to Dismiss Plaintiff's Cause of Action Four is **GRANTED**.

## E. LEAVE TO AMEND WOULD BE FUTILE

### 1. Applicable Law

A court should freely grant leave to amend a complaint dismissed for failure to state a claim. Fed. R. Civ. P. 15(a)(2); see also Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009).  The court may dismiss without leave to amend, however, "if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies."  Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (citations omitted).

### 2. Analysis

Here, because Plaintiff already had an opportunity to amend, further opportunity to amend would be futile.  See Conso v. City of Eureka, No. 21-CV-04480-RMI, 2022 WL 409958, at *8 (N.D. Cal. Feb. 10, 2022) (finding amendment to plaintiff's First Amendment retaliation claim would be futile given plaintiff had already had an opportunity to amend).  Moreover, to the extent Plaintiff now seeks to bring a new claim for a violation of his Fourth Amendment rights, leave to amend would be futile because Plaintiff incorporates evidence that clearly establishes probable cause for the search and seizure.  Accordingly, Causes of Action One, Two, Three, and Four are **DISMISSED WITHOUT LEAVE TO AMEND**.

## F. THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S REMAINING STATE LAW CLAIMS

### 1. Applicable Law

A district court may decline to exercise supplemental jurisdiction over state claims when "the district court has dismissed all claims over which it has original jurisdiction[.]"  28 U.S.C. § 1367(c)(3).  The general rule is, "[w]hen federal claims are dismissed before trial[,] pendent state claims also should be dismissed."  Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 367-68 (9th Cir. 1992) (ellipsis omitted).

///

JS-6

**2. Analysis**

Here, having dismissed the First, Second, Third, and Fourth Causes of Action, there are no federal claims remaining over which the Court has original jurisdiction. Rather, the only remaining claims arise under state law over which this Court has only supplemental jurisdiction. See 28 U.S.C. § 1367(c)(3). Considering the Court's decision to dismiss the First to Fourth Causes of Action without leave to amend, as well as judicial economy, fairness, and comity, the Court exercises its discretion and declines to entertain supplemental jurisdiction over the remaining state claims, which may be pursued in state court. See 28 U.S.C. § 1367(c)(3); Religious Tech. Ctr., 971 F.2d at 367-68.

# V.
# CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** as follows:

1. Defendants' Motion to Dismiss is **GRANTED without leave to amend as to Causes of Action One, Two, Three, and Four**;

2. The Court declines to exercise supplemental jurisdiction over the remaining state causes of action. Hence, Causes of Action Five, Six, Seven, Eight, and Nine are dismissed without prejudice to Plaintiff filing such claims in state court; and

3. Th**e Clerk of Court shall close this action**.

**IT IS SO ORDERED.** (JS-6)